[No. A046297. First Dist., Div. Five. Aug. 17, 1990.]

JACK L. BOYDSTON, Plaintiff and Respondent, v.
NAPA SANITATION DISTRICT, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication except for part III.

**COUNSEL**

Coombs & Dunlap, June E. Moroney and C. Preston Shackelford for Defendant and Appellant.

Kilpatrick, Kays, Daniels & Comisky and Hugh E. Comisky, Jr., for Plaintiff and Respondent.

**OPINION**

**HANING, J.**—The Napa Sanitation District appeals a peremptory writ of mandate commanding it to determine whether respondent Jack L. Boydston is a qualified bidder on a lease of appellant's property. Its principal contention is that the trial court erred in basing its ruling on the competitive bidding requirements of Public Contract Code section 20783, because the lease did not involve an expenditure of public funds.[1] We affirm.

### FACTS

Appellant publicly advertised for an annual tenant for 353 acres of pasture to be irrigated with reclaimed municipal wastewater, and 157 acres of nonirrigated pasture. The site was commonly known as the Kirkland Ranch. All potential tenants were required to have experience in cattle operations, rotation grazing practices, and irrigation with fixed sprinkler systems. Interested persons were to submit statements and bids, after which appellant would "negotiate an agreement with the most qualified bidder." Respondent bid $38,440, but appellant accepted the $33,144 bid of the Huston-Fifield & H.R. Angus partnership (Huston) which, in appellant's evaluation, ranked higher in farming experience.

Respondent informed Dennis M. Scherzinger, appellant's engineer-manager, that he wanted to "appeal" the award.[2] Scherzinger asked an agricultural consultant to review both bids. The consultant concluded that each bidder appeared able to operate the acreage successfully. However, he believed Huston had "the edge" as the more experienced operator with a broader base of management experience, more recent experience in the operation of sprinkler systems, better equipment resources, and larger herds

---

[1] Unless otherwise noted, all further statutory references are to the Public Contract Code.

[2] Respondent's action was not an appeal in the customary legal sense in that he was not seeking review from higher authority of an inferior body's decision. It is more accurately characterized a reconsideration, insofar as he was making his request to the same body that made the original award.

of cattle from which stocking rates could be quickly adjusted as required during the grazing season. The consultant's "one point of concern" with respondent was his ability to manage a "two herd" grazing plan. Appellant's board of directors reaffirmed the award.

Respondent then filed the instant petition for writ of mandate, contending that appellant was required to award the lease to him pursuant to the statutory public contract scheme of section 20783. Appellant opposed the petition on the grounds that section 20783 was not applicable because the lease did not involve an expenditure of public funds, but was merely an agricultural lease in exchange for the tenant's skill and experience in utilizing wastewater for irrigation.

The trial court issued a peremptory writ of mandate commanding appellant to determine whether respondent was a qualified and/or responsible bidder for the ranch and, if so, to award him the lease and vacate its prior award to Huston. If it determined he was not qualified, the agreement with Huston would remain in full force and effect.

DISCUSSION

I

Appellant contends section 20783 is inapplicable because the agreement herein is a lease rather than a contract for public work involving an expenditure of public funds. Section 20783 provides, in pertinent part: "When work is done by the [sanitation] district itself by force account, the amount shall not exceed five thousand dollars ($5,000). When the expenditure required for the work exceeds twenty-five thousand dollars ($25,000), it shall be contracted for and let to the lowest responsible bidder after notice. . . ." A public work contract is defined as "an agreement for the erection, construction, alteration, repair, or improvement of any public structure, building, road, or other public improvement of any kind." (§ 1101.) Sanitation districts may contract with private parties for the disposition or operation of any property or work which the districts themselves might dispose of, operate or undertake. (§ 20782.)

The operation of appellant's sewer plant results in the accumulation of reclaimed water and sludge, of which appellant must dispose. Although the original advertisement invited bids for a pasture "lease," the subject agreement is entitled, "Agreement for Reclaimed Water Use" and recites that the subject property exists specifically for the purpose of utilizing the reclaimed water and sludge as irrigation and fertilization for farming and grazing. Its specifications for the farming, grazing and use of sludge and reclaimed water on the property are precise. The primary purpose of the agreement is to dispose of the sludge and reclaimed water in a utilitarian fashion which, absent the agreement, appellant would otherwise perform itself. Conse-

quently, the agreement fits the statutory definition of a public work contract.

In response to appellant's argument that the agreement does not involve an expenditure of public funds, respondent cites *East Bay Garbage Co.* v. *Washington Township Sanitation Co.* (1959) 52 Cal.2d 708 [344 P.2d 289] for the proposition that in certain circumstances "lowest responsible bidder" requirements must be followed even if the expenditure for a public work is not made from the agency's treasury. In *East Bay Garbage Co.* a sanitary district solicited bids from private garbage collectors for an exclusive contract as the district's refuse collector, at collection rates set by the district but paid directly by the households to the collector. One bidder offered $22,500 and the other $15,000, and the contract was awarded to the $15,000 bidder. Former Health and Safety Code section 6515.5 required contracts for works exceeding $2,500 to be awarded to the lowest responsible bidder pursuant to the competitive bidding scheme set forth in the Health and Safety Code. The sanitary district had not followed the statutory notice requirements. In an action between the two bidders to determine the proper entitlement to the contract, the higher bidder prevailed.

On appeal, the $15,000 bidder continued its argument that adherence to the requirements was unnecessary because no expenditures were being made directly from the district's treasury. The Supreme Court disagreed. It observed that the statute, in effect, authorized two methods for handling the work: the district could perform the work itself or it could contract it out to a private party. If it chose the latter, as the district had done, it had to follow the statutory bidding process and award the contract to the lowest responsible bidder. "In such circumstances, the lowest responsible bidder would be the bidder who, on the basis of a uniform fee schedule, returned to the district the largest sum for the privilege granted by the district. [¶] It is a cardinal rule of statutory construction that the language of a statute should be construed to effect, rather than defeat, its evident object and purpose. [The $15,000 bidder] concedes the applicability of the statute where the district itself undertakes to do the work, in the sense that it will pay the scavenger firm directly for the services performed, and the cost to [the $15,000 bidder] exceeds $2,500. It is no less applicable where, as here, the district contracts with one of [several] competitive bidding scavenger firms to do the work required, and has the cost of removal of the garbage paid directly to the firm by the inhabitants of the district. The same reasoning prevails in protection of the public interest to insure the greatest possible value for the least expenditure. To hold otherwise would permit circumvention of the statute contrary to its purport and reasonable construction." (*East Bay Garbage Co.* v. *Washington Township Sanitation Co., supra*, 52 Cal.2d at p. 713, citations omitted.)

■ *East Bay Garbage Co.* reflects the public policy behind all statutory competitive bidding requirements governing the letting of public contracts: benefit to and protection of the public. (*Universal By-Products, Inc.* v. *City of Modesto* (1974) 43 Cal.App.3d 145, 152 [117 Cal.Rptr. 525]; 10 McQuillen, Municipal Corporations, § 29.29.) "[L]owest responsible bids" insure the greatest possible value for the least expenditure. (*East Bay Garbage Co.* v. *Washington Township Sanitation Co., supra*, 52 Cal.2d at p. 713.) "Highest responsible bids" secure the largest reasonable return to the public. (*Ibid*; *Brown* v. *City of Phoenix* (1954) 77 Ariz. 368, 371 [272 P.2d 358, 361].) In either case the principle is the same—assurance that the taxpayers receive the most for their money and that awards are made without favoritism, fraud or corruption. (See *City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court* (1972) 7 Cal.3d 861, 866-867 [103 Cal.Rptr. 689, 500 P.2d 601] [hereafter *City of Inglewood*].)

■ It is undisputed that appellant is engaging a private party to perform a task that, but for the agreement, it would perform itself. The difference between this agreement and the more customary public work contract is that payment for the work comes not in the form of cash from appellant's treasury, but in the form of use of appellant's land and reclaimed water for the private party's own agricultural purposes. The fact that the lessee pays rent does not alter the fact that the agreement requires the lessee to perform public work. The reasonable conclusion to be drawn from the agreement is that the rental value of the property and the fertilization/irrigation value of the reclaimed water together exceed the cost of the sewage by-product disposal, and the rent paid by the lessee represents the net difference. Under such circumstances appellant's duty to the taxpayers, pursuant to the policy of competitive bidding, is to obtain the highest rent, thereby reducing its expenditure for the public work.

■ Appellant argues that section 20784 clarifies the legislative intent to regulate competitive bidding only when it involves actual payment in cash of public funds. Section 20784 (added by Stats. 1989, ch. 1163, § 55) merely requires all bids to be presented under seal and accompanied by the bidder's security, and the sanitation district to return the security of unsuccessful bidders in a reasonable period of time after the award "to the lowest bidder." It does not support appellant's contention.

II

■ The dispositive issue is whether appellant correctly followed the "responsible bidder" requirements. In the context of "responsible bidder," the term "responsible" refers not only to the attribute of trustworthiness, but also to the quality, fitness and capacity of the bidder to perform the proposed agreement satisfactorily. (*City of Inglewood, supra*, 7 Cal.3d at p. 867; 10 McQuillen, Municipal Corporations, § 29.73.05.) When a statute

requires that an award be made to the lowest (or highest) responsible bidder, it must be awarded accordingly unless that bidder is found not responsible, i.e., not qualified to perform the particular work under consideration. Although public bodies have discretion to determine which bidders are responsible, they may not, if they determine more than one bidder is responsible, make the award on the basis of relative superiority. (*City of Inglewood, supra*, at p. 867.) ■ Before a contract may be awarded to one other than the lowest (or highest) bidder, the public body must (1) notify that bidder of any evidence reflecting upon the bidder's responsibility received from others or adduced as a result of independent investigation, (2) afford the bidder an opportunity to rebut such adverse evidence, and (3) permit the bidder to present evidence of qualification. (*Id.*, at p. 871; see also *Taylor Bus Service, Inc.* v. *San Diego Bd. of Education* (1987) 195 Cal.App.3d 1331, 1341 [241 Cal.Rptr. 379].)

■ In reviewing the award of a public contract our function is the same as the trial court's—to determine whether the public entity's decision is supported by substantial evidence. "In a mandamus action arising under Code of Civil Procedure section 1085, judicial review is limited to an examination of the proceedings before the agency to determine whether its actions have been arbitrary or capricious, entirely lacking in evidentiary support, or whether it failed to follow proper procedures or failed to give notice as required by law. [Citations.]" (*Taylor Bus Service, Inc.* v. *San Diego Bd. of Education, supra*, 195 Cal.App.3d at p. 1340.)

■ The record of the proceedings before appellant was not before the trial court. However, appellant submitted a declaration to the trial court from its engineer/manager, Dennis Scherzinger, in which he stated: "[At the meeting at which respondent presented his reconsideration request, appellant] indicated that this additional information [in the consultant's opinion letter] suggested that [respondent] may also be qualified to operate the . . . property, but they also indicated that [Huston] seemed more qualified and stated that their counsel informed them that they had to rely only on the initial evaluation of all seven Bids and Statements, and the initial interviews of all seven bidding parties and their references. They therefore voted to reaffirm the bid award to [Huston]." At the hearing before the trial court, appellant refused to stipulate that it had made a specific finding that respondent was qualified.

Relying on *City of Inglewood* the trial court concluded that the determination of a "qualified" bidder was not for the court but for appellant. Because the record was not definitive that appellant had made such a determination, it issued the writ commanding it to determine whether respondent was qualified. It also concluded that in reviewing the award appellant was not limited to the information presented with the original bids but,

pursuant to the due process guidelines of *City of Inglewood,* should consider any additional information presented by respondent to rebut appellant's initial award and demonstrate his qualification.

We conclude the trial court ruled correctly. An agency awarding a public contract must determine whether the low (or, in this case, high) bidder is qualified to perform the contract. (*City of Inglewood, supra,* 7 Cal.3d at p. 870.) The only information before the trial court was a statement that appellant suggested that respondent *may* have been qualified to operate the property. Such information is not equivalent to a conclusive finding that respondent *was* qualified. Furthermore, the finding of qualification should be made only after the low (or high) bidder has an opportunity to rebut adverse evidence of qualification and present additional evidence of qualification. Refusing to consider information assembled subsequent to that accompanying the original bid defeats the requisite review process due the bidders.

### III*

. . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Low, P. J., and King, J., concurred.

A petition for a rehearing was denied on September 11, 1990, and the following opinion was then rendered:

**THE COURT.**—The petition for rehearing is denied. ■ Counsel is reminded that assignments of error, points or arguments raised for the first time in a petition for rehearing are insufficient grounds for granting the petition. "It is the duty of counsel to see that all points are properly presented in the original briefs or argument, before submission." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 684, p. 656, and citations therein.) Further, issues not raised in the trial court will not be considered on appeal. (*Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517].)

The trial court's order permits the monetary evaluation raised by the petition for rehearing, and provides appellant with the opportunity to compile an evidentiary record on this issue.

A petition for a rehearing was denied September 11, 1990, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 30, 1990.

---

*See footnote, *ante,* page 1362.