[No. C027597. Third Dist. Jan. 5, 1999.]

M & B CONSTRUCTION et al., Plaintiffs and Respondents, v.
YUBA COUNTY WATER AGENCY, Defendant and Appellant.

COUNSEL

Bartkiewicz, Kronick & Shanahan, Alan B. Lilly and Richard P. Shanahan for Defendant and Appellant.

Rich, Fuidge, Morris & Iverson and David R. Lane for Plaintiffs and Respondents.

**OPINION**

**RAYE, J.**—Defendant Yuba County Water Agency (the Agency) appeals from a judgment granting plaintiff M & B Construction's petition for writ of mandate. The trial court found the Agency lacked discretion to require that bidders on a construction project bid have a class "A" contractor's license. It directed the Agency to allow all legally licensed contractors to bid on the project. We reverse.

## FACTS

The pertinent facts are undisputed. In April 1997 the Agency solicited bids pursuant to Public Contract Code section 22032, subdivision (c) for construction of the first phase of a canal and pipeline project. The project, intended to deliver surface river water to a water company, required construction of 3,400 feet of earth-lined canal, 903 feet of 6-foot diameter concrete pipeline, and related structures. The Agency's engineer estimated project costs would be allocated approximately 35 percent for the pipeline, 34 percent structural concrete, 23 percent earthwork, 4 percent fencing, and 4 percent miscellaneous (steel work, water control gate, meter installation and erosion control).

The California Contractors' State License Board issues class "A" licenses for general engineering contractors whose principal business involves fixed

works requiring specialized engineering knowledge and skill, including irrigation, drainage, water supply, flood control, pipeline, and related excavating, grading, trenching and concrete work. (Bus. & Prof. Code, § 7056; Cal. Code Regs., tit. 16, § 830.) Class "B" licenses are issued for general building contractors whose principal business involves buildings and similar structures. (Bus. & Prof. Code, § 7057; Cal. Code Regs., tit. 16, § 830.) Class "C" specialty licenses are issued for specialty contractors who perform construction work requiring special skills, and whose principal business involves the use of specialized building trades or crafts. (Bus. & Prof. Code, § 7058; Cal. Code Regs., tit. 16, § 832.) The Contractors' State License Board's regulations designate numerous specialties for which a class "C" license may be issued; each bearing a specialty designation number following the letter "C." (Cal. Code Regs., tit. 16, §§ 832-832.62.)

The Agency's bid specifications, prepared by the Agency's engineer and approved by the Agency's board of directors, required that the contractor constructing the project have a "Class A" general engineering contractor's license. On May 9, 1997, the Agency opened the nine bids received on the project. All bidders had a class "A" license except plaintiff, which held only a class "B" general contractor's license and two class "C" specialty licenses (class "C-8" for concrete and "C-12" for earthwork and paving).[1]

Plaintiff submitted the lowest monetary bid, but was rejected because it lacked the class "A" license. Plaintiff submitted a written objection to the Agency, contending it was required to let the bid to the lowest monetary bidder. The Agency postponed awarding the project to permit further investigation and communication with plaintiff's counsel.

The Agency's engineer identified numerous reasons for requiring a class "A" licensed prime contractor on the project, including complexity, type of equipment involved, and the fact that class "A" contractors typically perform the type of work involved in constructing the heavy, reinforced vertical concrete walls involved in the project, while class "C" contractors typically do only flat work. The Agency engineer also urged the use of a class "A" contractor would minimize the number of subcontractors needed on the project, increasing the likelihood change orders could be implemented

---

[1]Under Contractors' State Board regulations, a "C-8" concrete contractor installs "specified mass, pavement, flat and other concrete work; and places and sets screeds for pavements or flatwork." (Cal. Code Regs., tit. 16, § 832.08.) A "C-12" earthwork and paving contractor "digs, moves, and places material forming the surface of the earth, other than water, in such a manner that a cut, fill, excavation, grade, trench, backfill, or tunnel (if incidental thereto) can be executed." (Cal. Code Regs., tit. 16, § 832.12.)

efficiently. Finally, he noted that even if the bid specifications permitted a class "C" license, he would have recommended at least a "C-34" (pipeline contractor) license.[2] (Cal. Code Regs., tit. 16, § 832.34.) After considering the recommendations of its engineer and other staff, as well as information from plaintiff, the board adopted Resolution No. 1997-11, confirming rejection of plaintiff's bid because it lacked a class "A" license, and finding that such a bid requirement was reasonable and appropriate.

Plaintiff obtained a writ of mandate directing the Agency to allow all contractors that "are legally licensed to perform such work of improvement as prime contractors" to submit bids on the project. Plaintiff subsequently filed a motion for attorney fees on which the trial court delayed ruling pending the outcome of the present appeal. The Agency had already issued a second invitation for bids, eliminating the class "A" license requirement and making other changes not relevant here. Plaintiff was not the low bidder.

DISCUSSION

I.

Although the initial invitation for bids was superseded by a subsequent invitation for bids, the parties contend this appeal is not moot because it involves a matter of public interest which is likely to recur. We agree, and will consider the issue on its merits. (See, e.g., *Doe* v. *Wilson* (1997) 57 Cal.App.4th 296, 305 [67 Cal.Rptr.2d 187]; see also *Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 876-877 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392]; *Colombo Construction Co.* v. *Panama Union School Dist.* (1982) 136 Cal.App.3d 868, 875 [186 Cal.Rptr. 463].)

II.

Public Contract Code section 3300, enacted in 1985, provides: "(a) Any public entity . . . shall specify the classification of the contractor's license which a contractor shall possess at the time a contract is awarded. The specification shall be included in any plans prepared for a public project and in any notice inviting bids required pursuant to this Code."

---

[2] Under the Contractors' State License Board regulations, a C-34 pipeline contractor "fabricates and installs pipelines for the conveyance of fluids, such as water, gas, or petroleum, or for the containment or protection of any other material, including the application of protective coatings or systems and the trenching, boring, shoring, backfilling, compacting, paving and surfacing necessary to complete the installation of such pipelines." (Cal. Code Regs., tit. 16, 832.34.)

Two years later, Business and Professions Code section 7059, subdivision (b) (hereafter section 7059(b)) was enacted and provides in relevant part: "In public works contracts, as defined in Section 1101 of the Public Contract Code, *the awarding authority shall determine the license classification* necessary to bid and perform the project. In no case shall the awarding authority award a prime contract to a specialty contractor whose classification constitutes less than a majority of the project." (Italics added.)

Defendant contends the statutory directive of section 7059(b) to "determine the license classification" authorizes it to *select* from among the license categories in deciding which classification(s) should be permitted to bid on the project. In contrast, plaintiff contends the first sentence of section 7059(b) merely directs the agency to carry out the mandate of the second sentence, i.e., to *identify all* license classes whose type of work constitutes a majority of the contract. We therefore consider whether the word "determine" in subdivision (b) is used in the sense of selecting, i.e., exercising some judgment or discretion, or whether it simply means the ministerial act of identifying or listing.

" '[T]he interpretation and application of a statutory scheme to an undisputed set of facts is a question of law . . . which is subject to de novo review on appeal . . . .' . . ." (*Cal-Air Conditioning, Inc.* v. *Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 667 [26 Cal.Rptr.2d 703], citation omitted; *Valley Crest Landscape, Inc.* v. *City Council* (1996) 41 Cal.App.4th 1432, 1437 [49 Cal.Rptr.2d 184].) There may have been some confusion whether the proceeding below involved traditional or administrative mandamus. However, since the material facts are stipulated and the only question is interpretation of a statute, the distinction makes no difference in this appeal. (See *McIntosh* v. *Aubry* (1993) 14 Cal.App.4th 1576, 1584 [18 Cal.Rptr.2d 680].) In such a situation, we exercise independent judgment, whether the issue arises by traditional or administrative mandate. (*Ibid.*)

We begin with familiar rules of statutory construction. " '[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent. . . . In determining intent, we look first to the words themselves. . . . When the language is clear and unambiguous, there is no need for construction.' " (*Poliak* v. *Board of Psychology* (1997) 55 Cal.App.4th 342, 360 [63 Cal.Rptr.2d 866], citations omitted.) Considering only the bare language of section 7059(b), the word "determine" reasonably could be construed to convey the meaning ascribed by either party. (See, e.g., Am.

Heritage Dict. (3d ed. 1992) p. 509.) ■ In such a circumstance, we turn to extrinsic aids, including " 'the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporary administrative construction, and the statutory scheme of which the statute is a part.' [Citation]" (*Poliak* v. *Board of Psychology, supra,* 55 Cal.App.4th at p. 360.)

■ "Competitive bidding laws are passed for the benefit and protection of the taxpaying public, not for the benefit and enrichment of bidders. [Citation.] Their purposes, among others, are ' "to guard against favoritism, improvidence, extravagance, fraud and corruption; to prevent the waste of public funds; and to obtain the best economic result for the public." ' " (*Stacy & Witbeck, Inc.* v. *City and County of San Francisco* (1995) 36 Cal.App.4th 1074, 1094-1096 [44 Cal.Rptr.2d 472]; see also *Associated Builders & Contractors* v. *Contra Costa Water Dist.* (1995) 37 Cal.App.4th 466, 469-470 [43 Cal.Rptr.2d 600]; *Boydston* v. *Napa Sanitation Dist.* (1990) 222 Cal.App.3d 1362, 1368 [272 Cal.Rptr. 458]; *Konica Business Machines U.S.A., Inc.* v. *Regents of University of California* (1988) 206 Cal.App.3d 449, 456 [253 Cal.Rptr. 591].)

These considerations must be viewed from a practical perspective lest competitive bidding provisions be misapplied, denying the contracting public entity " 'authority to deal with problems in a sensible, practical way.' [Citation.]" (*Domar Electric, Inc.* v. *City of Los Angeles* (1994) 9 Cal.4th 161, 173 [36 Cal.Rptr.2d 521, 885 P.2d 934]; see *Ghilotti Construction Co.* v. *City of Richmond* (1996) 45 Cal.App.4th 897, 908 [53 Cal.Rptr.2d 389].)

■ The Agency's interpretation is supported by the legislative history of the subdivision. Section 7059(b) was adopted pursuant to Assembly Bill No. 1741 (1987-1988 Reg. Sess.) which was sponsored by the Contractors' State License Board to clarify when contracts could be let to specialty contractors where the contract involved work outside the specialty contractor's license. (See State and Consumer Services Agency, Dept. Consumer Affairs, Enrolled Bill Rep., Assem. Bill No. 1741 (1987-1988 Reg. Sess.) Sept. 1, 1987, p. 1.) The enrolled bill report states: "This bill may reduce some of the board's requests for classification determination since it will *allow* the awarding authority to determine the licensing classification necessary for bidding a project." (*Id.* at p. 2, italics added.) It further noted, "Under AB 1741 the specialty contractor would be protected from spending time and money in a public works bid process only to find him or herself disqualified after being the low bidder. *The awarding*

*authority would have more flexibility and control in deciding who it will be doing business with."* (*Id.* at p. 3, italics added.)

Plaintiff contends the Agency's decision is based on "favoritism and bias" because the Agency favored holders of class "A" licenses over holders of other classes of license. It urges that allowing an agency to select from among arguably qualified license categories permits the agency to consider the "relative superiority" of the bidders, a practice prohibited in *City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court* (1972) 7 Cal.3d 861, 867 [103 Cal.Rptr. 689, 500 P.2d 601]. However, as the Supreme Court later noted, its decision in *City of Inglewood* "did not involve a challenge to the validity of a particular bid requirement, nor did it concern a situation where the lowest monetary bidder had failed to comply with all advertised bid requirements." (*Domar Electric, Inc.* v. *City of Los Angeles, supra,* 9 Cal.4th at p. 178 [finding municipality could deny contract to low bidder who failed to comply with bid specification requiring documented outreach efforts to minority- and woman-owned subcontractors].)

Here, unlike in *City of Inglewood,* the Agency did not make a postbid determination that one of the responsible bidders was relatively superior to the admittedly responsible low bidder. Nor did it devise bid specifications favoring a particular contractor. Based on the recommendations of its engineer, the Agency made a prebid determination that the public would be better served in terms of quality and economy by letting the project only to licensees with the most appropriate experience, while minimizing the need for subcontractors. Such an administrative decision is subject to reversal only if it is " 'arbitrary, capricious or entirely lacking in evidentiary support, . . . contrary to established public policy or unlawful or procedurally unfair . . . .' " (*Mike Moore's 24-Hour Towing* v. *City of San Diego* (1996) 45 Cal.App.4th 1294, 1303 [53 Cal.Rptr.2d 355].) We conclude that it was not.[3]

---

[3]Though we are not faced with the "responsibility" issue considered by the court in *City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court, supra,* 7 Cal.3d 861, we note that contracting entities are vested with great discretion in determining whether a bidder is responsible. (See *Stacy & Witbeck, Inc.* v. *City and County of San Francisco, supra,* 36 Cal.App.4th at p. 1094, fn. 9; *Boydston* v. *Napa Sanitation Dist., supra,* 222 Cal.App.3d at p. 1369.) Contrary to plaintiff's interpretation, an assessment of whether a bidder is responsible involves more than a consideration of trustworthiness. As the court stated in *City of Inglewood, supra,* 7 Cal.3d 861: "It bears emphasis that the word 'responsible' in the context of the statute is not necessarily employed in the sense of a bidder who is trustworthy so that a finding of nonresponsibility connotes untrustworthiness. Rather, while that term includes the attribute of trustworthiness, it also has reference to the quality, fitness and capacity of the low

■ Plaintiff also contends because the Contractors' State License Board has the exclusive right to license contractors pursuant to Business and Professions Codes sections 7028 et seq., 7032 and 7059, the Agency is preempted from "making new or different requirements for the qualifications of contractors." " ' "Local legislation in conflict with general law is void. Conflict exists if the ordinance duplicates [citation], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citation]." ' " (*Stacy & Witbeck, Inc.* v. *City and County of San Francisco, supra,* 36 Cal.App.4th at p. 1092.) However, those circumstances do not apply here. The Agency's decision affects only which category of licensee may bid on a particular contract, not who may be licensed, or the qualifications for licensure.

In *Stacy & Witbeck, Inc.* v. *City and County of San Francisco, supra,* 36 Cal.App.4th 1074, the court rejected an essentially identical preemption argument raised by a contractor precluded from bidding on a municipality's contracts because he previously submitted a false claim. (*Id.* at pp. 1095-1096.) The court found the municipality's refusal to consider bids from the contractor was not preempted by the Contractors' State License Law. (*Id.* at p. 1096; Bus. & Prof. Code, § 7000 et seq.) It reasoned: "While disciplinary action affecting the licensing stature of a contractor clearly is fully and completely covered by general law, the matter of how municipalities interpret and carry out their duties under the competitive bidding mandates of their own charter or the Public Contract Code is not. Further, there is nothing in the general law indicating that local regulation in the area of controlling future contract relations with public works contractors would be an anathema. And finally, since the local regulation only goes to the City's own business dealings with contractors and not to any third party relationship, it is difficult to view this as a matter in which transient citizens of the state would be particularly concerned." (36 Cal.App.4th at p. 1096.)

Here, as in *Stacy & Witbeck*, the Agency's decision goes only to its own dealings with contractors, and has no impact on contractors' dealings with third parties. There is nothing in the general law which conflicts with the Agency's right to consider license classifications in determining whether a bidder is qualified to bid on a contract. On the contrary, we find authority to make such a determination is expressly granted by section 7059(b).

---

bidder to satisfactorily perform the proposed work." (*Id.* at p. 867; accord, *Stacy & Witbeck, Inc.* v. *City and County of San Francisco, supra,* 36 Cal.App.4th at p. 1094, fn. 9.)

## DISPOSITION

The judgment is reversed. The superior court is directed to discharge the peremptory writ of mandate and enter a new judgment denying the writ petition. Appellant is awarded costs on appeal.

Blease, Acting P. J., and Puglia, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.