[No. S077461. June 12, 2000.]

KAJIMA/RAY WILSON, Plaintiff and Respondent, v.
LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION
AUTHORITY, Defendant and Appellant.

## Counsel

De Witt W. Clinton and Lloyd W. Pellman, County Counsel, and Richard P. Chastang, Deputy County Counsel, for Defendant and Appellant.

Manuela Albuquerque, City Attorney (Berkeley) and Christopher H. Alonzi, Deputy City Attorney, for 99 California Cities and the California State

Association of Counties as Amici Curiae on behalf of Defendant and Appellant.

Kamine, Steiner & Ungerer, Bernard S. Kamine, Maurya K. Hogan and Joseph M. Rossini for Plaintiff and Respondent.

The Diepenbrock Law Firm, Eileen M. Diepenbrock; Dauer & Thompson, James E. Thompson, Jennifer L. Dauer and Paul F. Dauer for the Associated General Contractors of California as Amicus Curiae on behalf of Plaintiff and Respondent.

Monteleone & McCrory, Thomas P. McGuire and Joseph C. Malpasuto for Southern California Contractors Association and Engineering Contractors Association as Amici Cuirae on behalf of Plaintiff and Respondent.

John H. Findley for Pacific Legal Foundation and Kellogg Construction as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BROWN, J.**—We consider in this case whether the lowest responsible bidder that is wrongfully denied a public contract has a cause of action for monetary damages against the public entity, and if so, whether those damages include bid preparation costs and lost profits. We conclude bid preparation costs but not lost profits are available under a theory of promissory estoppel. We therefore reverse the judgment of the Court of Appeal.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In April 1994, the Los Angeles Metropolitan Transportation Authority (MTA) solicited bids to build the Red Line Hollywood/Highland station and tunnels. The lowest bid was from Tutor-Saliba-Perini (Tutor-Saliba), but plaintiff Kajima/Ray Wilson (Kajima) successfully protested Tutor-Saliba receiving the award because Tutor-Saliba had not attained MTA's goal regarding use of Disadvantaged Business Enterprises (DBE). Ultimately, none of the submitted bids were deemed responsive, and MTA exercised its right to reject all bids. (Pub. Util. Code, § 130232, subd. (a) ["The commission, at its discretion, may reject any and all bids and readvertise."].) Tutor-Saliba filed suit challenging this action.

In November 1994, MTA solicited new bids for the same public project. This solicitation set a minimum DBE goal of 30 percent of the total amount bid. The three lowest bids came from Kajima at $68,912,089, Tutor-Saliba at $69,887,867 and Kiewit-Shea at $72,970,345. The contract was awarded to Tutor-Saliba despite the fact that its bid was almost $1 million more than Kajima's. (See Pub. Util. Code, § 130232, subd. (a) [contracts in excess of $25,000 required to be awarded to the "lowest responsible bidder"].) Kajima again protested. Tutor-Saliba's suit against MTA with regard to the April 1994 solicitation was subsequently dismissed.

MTA justified its selection on the ground that Tutor-Saliba, but not Kajima, satisfied the DBE participation goal. Kajima fell below the goal because it identified Manual Tejeda Trucking (Tejeda) as a "broker" in its bid, while Tutor-Saliba identified Tejeda as a "subcontractor." Unknown to Kajima, MTA had an unwritten policy granting only a 5 percent DBE credit of bid amounts designated for entities identified as "brokers," while awarding 100 percent credit of bid amounts for those identified as "subcontractors." Had Kajima received the same percentage credit for the work to be performed by Tejeda as did Tutor-Saliba, Kajima's DBE credit would have exceeded the 30 percent goal.

Kajima filed suit against MTA, seeking an injunction, issuance of a writ of mandate or prohibition, and damages. Kajima sought $93,411 for its round 1 bid and protest expenses, $134,092 for its round 2 bid and protest expenses, $1,298,589 in unabsorbed overhead expenses, and $1,544,034 in lost profit on the MTA contract. The total damages sought were $3,070,126, plus prejudgment interest.

Following a bench trial, the court issued a peremptory writ of mandate, ordering MTA to cease using its 5-percent-broker policy in connection with DBE credits, "instead of evaluating the amount of work proposed to be subcontracted to the 'broker.'" In addition, the court awarded Kajima $44,869 in round 2 bid expenses, $89,223 in round 2 bid protest expenses, $300,000 in unabsorbed overhead, $350,000 in lost profits, and $139,829.74 in prejudgment interest. The total judgment entered was $923,921.74.

The Court of Appeal affirmed. It first concluded MTA's application of the 5 percent policy to Kajima's bid was arbitrary, violated federal

regulations, and was an abuse of discretion. MTA does not challenge this ruling here. It further held that the trial court acted within its discretion in awarding lost profits under a promissory estoppel theory. It stated, "We see no reason to draw a bright line in public works cases to preclude recovery of any specific type of damages under all circumstances, including lost profits . . . . Instead, because of the equitable nature of the [promissory estoppel] remedy, each case should be addressed on its merits to determine if the trial court has abused its discretion." Finally, the court concluded MTA had waived the issue of overhead costs on appeal. MTA's petition for rehearing was denied.

We granted MTA's petition for review to determine whether the lowest responsible bidder who is wrongfully denied a public contract has a cause of action for monetary damages against the public entity, and if so, whether those damages include lost profits. We consider only whether Kajima was properly awarded its bid preparation costs and lost profits. While the trial court also awarded Kajima its round two bid protest costs and overhead costs, MTA has waived review of those issues.

## II. DISCUSSION

### A. *Background*

■ In California, under the doctrine of promissory estoppel, "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." (Rest.2d Contracts, § 90, subd. (1), p. 242; see *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 6 [151 Cal.Rptr. 323, 587 P.2d 1136] [§ 90 "has been judicially adopted in California"].) Promissory estoppel is "a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 672 [111 Cal.Rptr. 693, 517 P.2d 1157].)

In *Drennan v. Star Paving Co.* (1958) 51 Cal.2d 409, 412 [333 P.2d 757], a subcontractor withdrew its bid prior to acceptance by the general contractor, but after the general contractor had used the bid in his master bid for the

job, and was awarded the public contract. We concluded there was no contract between the general contractor and subcontractor, but nonetheless held the subcontractor's bid enforceable under a theory of promissory estoppel because of the general contractor's reasonable and detrimental reliance. (*Id.* at pp. 413-415.) We noted that the subcontractor "had reason to expect that if its bid proved the lowest it would be used by [the general contractor]. It induced 'action . . . of a definite and substantial character on the part of the promisee' " (*id.* at p. 413) because the general contractor was now bound to perform that portion of the job for the amount stated in the subcontractor's bid. (*Id.* at p. 415.) We concluded "it is only fair that plaintiff should have at least an opportunity to accept defendant's bid after the general contract has been awarded to him." (*Ibid.*)

In *City of Inglewood-L.A. County Civic Center Auth. v. Superior Court* (1972) 7 Cal.3d 861, 863-865 [103 Cal.Rptr. 689, 500 P.2d 601] (*City of Inglewood*), Argo Construction Company, Inc. (Argo) instituted a mandate proceeding to have a management contract awarded to Swinerton & Walberg Company (Swinerton) set aside. Argo contended it was the lowest responsible bidder and was improperly denied the contract. (*Id.* at pp. 864, 867.) We agreed, and remanded the case to the trial court. (*Id.* at pp. 870, 871.)

In the subsequent appeal, the court first concluded the misaward by a public entity of a public works contract to one other than the lowest responsible bidder did not give the lowest bidder a cause of action in tort. (*Swinerton & Walberg Co. v. City of Inglewood-L.A. County Civic Center Authority* (1974) 40 Cal.App.3d 98, 101, 103 [114 Cal.Rptr. 834] (*Swinerton*).) The court further concluded, however, that Swinerton could recover damages under a theory of promissory estoppel. (*Swinerton, supra*, 40 Cal.App.3d at pp. 103-104.) In particular, the court reasoned that "the Authority promised in its solicitation of bids to award the contract to the lowest responsible bidder and Argo's reasonable and detrimental reliance upon this promise" stated a cause of action for promissory estoppel " 'if injustice can be avoided only by enforcement of the promise.' " (*Id.* at p. 104, quoting Rest.2d Contracts, § 90.) The court rejected the civic center authority's argument that Argo could not state a cause of action for promissory estoppel because "the competitive bidding requirements on contracts for public works exist to protect the public rather than the bidders," and because the civic center authority had the right to reject any and all bids. (*Swinerton, supra*, 40 Cal.App.3d at p. 104.)

In determining whether " 'injustice can be avoided only by enforcement of the promise,' " the court stated, "To hold that Argo was not entitled to rely

upon this promise because of the just-mentioned reservation of the right to reject any and all bids would make the Authority's promise an illusory one and render the whole competitive bidding process nugatory. . . . The public obviously has both an economic and a moral interest in public works contracts being awarded to the lowest responsible bidder. An award of monetary damages to the lowest responsible bidder for the misaward of a public works contract would be in the public interest as well as that of the injured bidder because such an award would deter such misconduct by public entities in the future." (*Swinerton, supra,* 40 Cal.App.3d at pp. 104-105.) The court further stated, "the damages that Argo may recover in promissory estoppel might well be limited to those it sustained directly by reason of its justifiable reliance upon the Authority's promise—in other words, to the expenses it incurred in its fruitless participation in the competitive bidding process. . . . Other courts have taken this view in cases which were really promissory estoppel cases. . . . [¶] We hold that Argo stated . . . facts sufficient to constitute a cause of action in promissory estoppel against the public entities. What recovery Argo may attain on such cause of action will have to await the trial of the action and the trial court's consideration of what is just under all of the circumstances—including Swinerton's possible recovery in *quantum meruit.*" (*Id.* at p. 105.)

In *Universal By-Products, Inc. v. City of Modesto* (1974) 43 Cal.App.3d 145, 149, 156 [117 Cal.Rptr. 525], the court refused recovery under promissory estoppel to a disappointed bidder where the public entity had exercised its express right to reject all of the bids. Moreover, the court saw "no injustice in requiring appellant to bear the expense of preparing its bid; it entered into the bidding procedure with full knowledge of respondent's right to reject the bids if it should choose to do so. As an experienced business entity, appellant must be deemed to have assumed the risk that respondent might act in accordance with its legal right; such a risk is a cost of seeking to do business with a governmental body." (*Id.* at p. 157; *Pacific Architects Collaborative v. State of California* (1979) 100 Cal.App.3d 110, 116, 125 [166 Cal.Rptr. 184] [no bid preparation costs recoverable when all bids rejected, noting "bids and quotations are a normal part of the cost of doing business"].)

In *Monterey Mechanical Co. v. Sacramento Regional County Sanitation Dist.* (1996) 44 Cal.App.4th 1391, 1412 [52 Cal.Rptr.2d 395] (*Monterey Mechanical*), the Court of Appeal first concluded the district board's rejection of plaintiff's bid was an abuse of discretion. It further rejected the respondents' argument that "plaintiff is not entitled to a writ of mandate compelling the Board to set aside the award [to the second lowest bidder]

because it has an adequate remedy at law," i.e., compensation in damages for any losses caused by the board's statutory violation. (*Id.* at p. 1413.) It concluded damages were an inadequate remedy because the district was immune from tort liability. In addition, relying on *Swinerton, supra,* 40 Cal.App.3d 98, it stated promissory estoppel damages, if any, would be limited to the cost of preparing a bid. (*Monterey Mechanical, supra,* 44 Cal.App.4th at p. 1413; see *M.G.M. Const. Co. v. Alameda County* (N.D.Cal. 1985) 615 F.Supp. 149, 151 [relying on *Swinerton* to state plaintiff only entitled to recover bid preparation and submission expenses].)

### B. *Analysis*

#### 1. *Availability of Monetary Damages Against Public Entity*

To the extent MTA awarded a contract, it was statutorily required under the circumstances of this case to award that contract to the lowest responsible bidder. (Pub. Util. Code, § 130232, subd. (a) [contracts in excess of $25,000 required to be awarded to the "lowest responsible bidder"].) ▮ The question here is whether the lowest responsible bidder that is not awarded a public contract has a cause of action in California for monetary damages against the public entity once injunctive relief is no longer available.[1] Not surprisingly, MTA argues a disappointed bidder has no cause of action for damages against a public entity for misaward of a contract; Kajima disagrees.

In California, competitive bidding is largely governed by statute. None of these provisions, however, including the comprehensive 1982 Public Contract Code, address whether the lowest responsible bidder that is wrongfully denied a contract has a cause of action for monetary damages. (See Pub. Contract Code, § 100 ["The Legislature finds and declares that placing all public contract law in one code will make that law clearer and easier to find."].) This could mean the Legislature has chosen not to provide such a

---

[1] Of course, as the parties agree, the most effective enforcement of the competitive bidding law is to enforce by injunction the representation that the contract will be awarded to the lowest responsible bidder. This is generally done by setting aside the contract award to the higher bidder. (See, e.g., *City of Inglewood, supra,* 7 Cal.3d at p. 870; *Monterey Mechanical, supra,* 44 Cal.App.4th at p. 1412.) However, as a practical matter, by the time the basis for relief is persuasively demonstrated, the underlying contract may already have been substantially or fully performed. That is apparently what happened here, and this scenario seems recurring. (See, e.g., *Swinerton, supra,* 40 Cal.App.3d at p. 103 [noting "it is now too late" for injunctive relief to be effective].) Hence, once injunctive relief is no longer an effective remedy, the question arises whether monetary relief is available, and if so, what the appropriate measure of damages is in this context.

remedy. Or it may reflect a legislative assumption that a statutory remedy would be redundant because recovery is available under a promissory estoppel theory. In similar circumstances, California courts long ago authorized a disappointed bidder to seek a writ of mandate to have a contract set aside; the Legislature has never codified this limited relief. (See, e.g., *City of Inglewood, supra,* 7 Cal.3d at p. 864.)

In addition, under Public Utilities Code section 130202, "All claims for money or damages against the [MTA] are governed by Division 3.6 (commencing with Section 810) of Title 1 of the Government Code except as provided therein, or by other statutes or regulations expressly applicable thereto." Government Code section 811 provides that " 'Law' includes not only enactments but also the decisional law applicable within this State as determined and declared from time to time by the courts of this State and of the United States." Government Code section 814 provides that "[n]othing in this part affects liability based on contract . . . ." Accordingly, it appears that if we are satisfied a valid theory exists under which a disappointed bidder could recover monetary relief, there is no statutory bar to our fashioning such a remedy.

Moreover, allowing recovery of some measure of damages once injunctive relief is no longer effectively available furthers the purposes of the competitive bidding laws by encouraging proper challenges to misawarded public contracts by the most interested parties, and deterring government misconduct. ▉ " 'The provisions of statutes, charters and ordinances requiring competitive bidding in the letting of municipal contracts are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable . . . .' " (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 173 [36 Cal.Rptr.2d 521, 885 P.2d 934]; Pub. Contract Code § 100, subds. (b)-(d) [Legislature's intent in enacting Public Contract Code includes "ensur[ing] full compliance with competitive bidding statutes as a means of protecting the public from misuse of public funds," "provid[ing] all qualified bidders with a fair opportunity to enter the bidding process, thereby stimulating competition in a manner conducive to sound fiscal practices," and "eliminat[ing] favoritism, fraud, and corruption in the awarding of public contracts."].)

 The parties agree that if monetary relief is available, it is available under a promissory estoppel theory.[2] That is, when a public entity solicits bids, it represents, consistent with the statutory mandate, that if the contract is awarded, it will be awarded to the lowest responsible bidder. In reliance on this representation or requirement, a bidder incurs costs (here Kajima spent $44,869) preparing and submitting a bid. If its bid is the lowest, and it is a responsible bidder, but the contract is awarded to a higher bidder, the elements of a promissory estoppel cause of action appear to be established. MTA does not argue otherwise.

It is important to note, however, that while nothing precludes application of a promissory estoppel theory to the disappointed bidder context, it fits these circumstances imperfectly. Promissory estoppel was developed to do rough justice when a party lacking contractual protection relied on another's promise to its detriment. Here, we use promissory estoppel primarily to further certain public policies by creating a damages remedy for a public entity's statutory violation. Moreover, unlike the typical promissory estoppel situation, the MTA retains discretion to reject all of the bids as it did in round 1; the lowest bidder has no absolute right to be awarded the contract. These peculiarities play a role in determining the measure of damages available under a promissory estoppel theory, the subject to which we now turn.[3]

### 2. *Measure of Damages Under Promissory Estoppel*

 We now consider whether under a theory of promissory estoppel bid preparation costs and lost profits are recoverable against a public entity for the misaward of a public contract. "As the matter is a question of law, we are not bound by evidence on the question presented below or by the lower court's interpretation." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

 At the time Kajima's bid was submitted, it had reasonably incurred bid preparation costs in reliance on the representation that if the contract was awarded, it would be awarded to the lowest responsible bidder. Because the

---

[2]Kajima concedes "[a] bidder deprived of a public contract, by the wrongful misaward of that contract, has neither a tort nor a breach of contract action against the public agency."

[3]In a number of other jurisdictions, such a remedy is governed (perhaps more appropriately) by statute. (See *post*, fns. 4, 5; see also 31 U.S.C. § 3554(c)(1); 4 C.F.R. § 21.8(d) (1999).) The Legislature has greater freedom than a court to fashion innovative remedies that balance the competing public policy concerns in this area.

MTA was authorized to reject all bids, Kajima did not know at this point whether the contract would even be awarded. Nor, because of the secrecy of the bidding process, did Kajima know whether it was indeed the lowest responsible bidder. Therefore, given these uncertainties which are inherent in competitive bidding, bid preparation costs, not lost profits, were the only costs reasonably incurred.

Moreover, realistically, the lowest bid may be an unprofitable one. Any miscalculation or unanticipated rise in costs may erode or even extinguish the bidder's profit margin. Thus, awarding plaintiff the profits it would have earned on the contract appears vastly disproportionate to the losses actually sustained as a result of its detrimental reliance and necessarily speculative. Indeed, such an award arguably places Kajima in a *better* position than if it had actually performed the contract. (See Rest.2d Contracts, § 90, com. d, p. 244 ["Unless there is unjust enrichment of the promisor, damages should not put the promisee in a better position than performance of the promise would have put him."].)

Kajima argues that unless lost profits are recoverable, a disappointed bidder will have little incentive to pursue a valid claim, and will ultimately decline to participate in competitive bidding for public works contracts. The numerous cases in which a disappointed bidder has sought a writ of mandate to have the contract awarded to another set aside demonstrate that the incentive of significant monetary damages is not required for unsuccessful bidders to act as guardians of the competitive bidding process. (See, e.g., *City of Inglewood, supra,* 7 Cal.3d at p. 864; *Monterey Mechanical, supra,* 44 Cal.App.4th at p. 1397; *Boydston v. Napa Sanitation Dist.* (1990) 222 Cal.App.3d 1362, 1366 [272 Cal.Rptr. 458]; *Pozar v. Department of Transportation* (1983) 145 Cal.App.3d 269, 270-271 [193 Cal.Rptr. 202].) Moreover, given that only two other cases have been brought to our attention in which lost profits were actually awarded, we doubt the accuracy of Kajima's prediction that absent the possibility of such damages companies will be disinclined to participate in public works bidding. (See *City of Durant v. Laws Const. Co., Inc.* (Miss. 1998) 721 So.2d 598, 604-607 [upholding lost profit award]; *Bradford & Bigelow, Inc. v. Com.* (1987) 24 Mass.App. 349 [509 N.E.2d 30, 35, 37] [same].)

More importantly, it is clear "that neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public." (*County of San Diego v. Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826 [186 P.2d 124, 175 A.L.R. 747].) ██ We have stated that the competitive bidding statutes are " 'enacted for the benefit of property

holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest.' " (*Domar Electric, Inc. v. City of Los Angeles, supra,* 9 Cal.4th at p. 173.) Of course, as a practical matter, in benefiting the public by requiring fairness in evaluating and accepting bids, and thereby increasing competition, the competitive bidding laws also benefit bidders. (See Pub. Contract Code, § 100, subds. (b)-(d).) ▮ It is difficult, however, to ascertain how the general public benefits by allowing a disappointed bidder to recover lost profits; indeed, just the opposite seems true. Permitting recovery of lost profits "unduly punishes the tax-paying public" while providing an unfair windfall to bidders like Kajima "for effort they did not make and risks they did not take." (*City of Atlanta v. J.A. Jones Const. Co.* (1990) 260 Ga. 658 [398 S.E.2d 369, 371].) As one commentator has stated, "[t]he misfeasance of public officials in failing to award the contract to the lowest bidder should not be compounded by not only requiring unjustified additional expenditure of public funds on the awarded contract, but also allowing recovery for lost profits to the aggrieved low bidder." (10 McQuillin, Municipal Corporations (3d rev. ed. 1999) § 29.86, p. 550, fn. omitted.) In addition, as MTA notes, if lost profits are recoverable, the possibility of significant monetary gain alone may encourage frivolous litigation and further expend public resources. Moreover, prudence is warranted whenever courts fashion damages remedies in an area of law governed by an extensive statutory scheme.

Kajima summarily asserts that allowing lost profits to a disappointed bidder will not result in double payment by the taxpaying public because the payments to the successful bidder "under that illegal contract should probably be recouped by the agency." Kajima is apparently asserting that because the contract with Tutor-Saliba is allegedly void, all payments thereunder can be recovered and the profit Tutor-Saliba would have earned instead awarded to Kajima. Of course, neither the efficacy of MTA's contract with Tutor-Saliba, nor MTA's ability to recover payments made under that contract, is before us. It seems inappropriate to fashion a damages remedy based on such speculation.

Kajima further argues a contract between a public entity and a private party is governed by the same laws that apply to a contract between private parties. That may be. However, Kajima does not have a contract with MTA. Rather, it may recover damages solely under the equitable doctrine of promissory estoppel. In determining what remedy "justice requires" (Rest.2d Contracts, § 90, subd. (1), p. 242), it is incumbent on this court to

consider the broad-ranging social consequences of the chosen remedy. Allowing recovery of lost profits whenever a contract is wrongfully denied "could drain the public fisc in response to mere carelessness on the part of low level government officials." (*Marbucco Corp. v. City of Manchester* (1993) 137 N.H. 629 [632 A.2d 522, 525].)

The law in a majority of other jurisdictions is similar. Indeed, in some jurisdictions a disappointed bidder has no cause of action for damages against the public entity.[4] These jurisdictions generally reason that such recovery is inappropriate because the competitive bidding laws were enacted for the benefit of the public, not the private contractor. As one court has stated, "whatever may be the specifics of the duty owing by a public official in a given case to the members of the public to accept the bid proposal which best serves the public interest, that duty by its very nature runs to the members of the public, and to them alone. It does not run to the bidders, and does not create any right or rights in the bidders. . . . [¶] . . . [¶] It is true that . . . a bidder claiming to be entitled to the award of a contract for public work has long been held to have sufficient standing to challenge the rejection of his bid or the letting of the contract to another bidder, and to compel the award of the contract to him [citation]. But such standing was granted simply and solely in order that the public interest might be served by compelling the lax or erring public official to properly perform his public trust. It was not thereby intended to create or establish in the bidder entitled to the award of the contract a right which, if violated, would render the public agency liable in damages to the bidder." (*M. A. Stephen Construction Co. v. Borough of Rumson, supra,* 308 A.2d at p. 384.)

---

[4](See, e.g., Mont. Code Ann. § 18-4-242(7) [For disappointed bidders, "there is no right under any legal theory to recover a form of damages or expenses for a solicitation or award of a contract in violation of law."]; *Lawrence Brunoli, Inc. v. Town of Branford* (1999) 247 Conn. 407 [722 A.2d 271, 275] ["[A]n unsuccessful bidder does not have standing to seek money damages. To conclude otherwise would run counter to the sound and established purpose of protecting the public interest that underlies the municipal bidding statutes."]; *Sutter Bros. Const. v. City of Leavenworth* (1985) 238 Kan. 85 [708 P.2d 190, 192, 195-196, 65 A.L.R.4th 81] [no cause of action for damages noting bidder commenced action long after contract awarded to second lowest bidder and work completed]; *Gulf Oil Corp. v. Clark Cty.* (1978) 93 Nev. 116 [575 P.2d 1332, 1333-1334] [lowest bidder does not have a cause of action for damages in case where injunctive relief was not diligently pursued]; *Stride Contr. v. Bd. of Contract & Supply* (1992) 181 A.D.2d 876 [581 N.Y.S.2d 446, 447-448] [no cause of action for damages, here lost profits, only standing to require contract be awarded to lowest responsible bidder]; *M. A. Stephen Construction Co. v. Borough of Rumson* (1973) 125 N.J.Super. 67 [308 A.2d 380, 382, 385] [lowest responsible bidder not entitled to damages even if bids rejected in violation of statute].)

The majority of jurisdictions, however, allow either by statute[5] or case law[6] recovery of bid preparation and in some cases bid protest costs, but not

[5](See, e.g., Alaska: Alaska Stat. § 36.30.585, subd. (c) ["if a protest is sustained in whole or part, the protester's damages are limited to reasonable bid or proposal preparation costs"]; Arkansas: Ark. Code Ann. § 19-11-244, subd. (g) ["protesting bidder or offeror may be entitled to the reasonable costs incurred in connection with the solicitation, including bid preparation costs, through the commission"]; Colorado: Colo. Rev. Stat. § 24-109-104 ["protester shall be entitled to the reasonable costs incurred in connection with the solicitation, including bid preparation costs"]; Hawaii: Hawaii Rev. Stat. § 103D-701, subd. (g) ["In addition to any other relief, when a protest is sustained and the protestor should have been awarded the contract under the solicitation but is not, then the protestor shall be entitled to the actual costs reasonably incurred in connection with the solicitation, including bid or proposal preparation costs but not attorney's fees."]; Louisiana: La. Rev. Stat. Ann. art. 39, § 1671, subd. G ["In addition to any other relief, when the protest is . . . sustained and the protesting bidder or offeror should have been awarded the contract but is not, the protesting bidder or offeror shall be entitled to the reasonable costs incurred in connection with the solicitation, including bid preparation costs other than attorney's fees . . . ."]; Maryland: Md. Code Ann., State Fin. & Proc. § 15-221.1, subd. (a) ["The Board of Contract Appeals may award a prospective bidder or offeror, a bidder, or an offeror the reasonable costs of filing and pursuing a protest, not including attorney's fees . . . ."]; Minnesota: Minn. Stat. § 471.345, subd. 14 ["In any action brought challenging the validity of a municipal contract under this section, the court shall not award, as any part of its judgment, damages, or attorney's fees, but may award an unsuccessful bidder the costs of preparing an unsuccessful bid."]; South Carolina: S.C. Code Ann. § 11-35-4310, subd. (4) [bidder or offeror who should have been awarded contract, but is not, may be "awarded a reasonable reimbursement amount, including reimbursement of its reasonable bid preparation costs"]; Utah: Utah Code Ann. § 63-56-47, subd. (1) ["When a protest is sustained . . . and the protesting bidder or offeror should have been awarded the contract under the solicitation but is not, the protestor, in addition to any other relief, shall be entitled . . . to the reasonable costs incurred in connection with the solicitation, including bid preparation and appeal costs"]; the District of Columbia: D.C. Code Ann. § 1-1189.8, subd. (f)(2) ["The Board may, when requested, award reasonable bid or proposal preparation costs and costs of pursuing the protest, not including legal fees, if it finds that the District government's actions toward the protester or claimant were arbitrary or capricious."].)

[6](See, e.g., *Heyer Products Company v. United States* (1956) 140 F.Supp. 409, 412-413 [135 Ct.Cl. 63] [despite alleged egregious government misconduct, unsuccessful bidder cannot recover lost profits because there was no contract, but may recover bid preparation expenses based on government's implied promise to give bid fair and impartial consideration]; *Keco Industries, Inc. v. United States* (1970) 428 F.2d 1233, 1237, 1240 [192 Ct.Cl. 773] [extending *Heyer* to cases in which plaintiff adduces prima facie evidence of arbitrary and capricious government conduct]; *Planning & Design Solutions v. City of Sante Fe* (1994) 118 N.M. 707 [885 P.2d 628, 636] [relying on implied contract theory to allow recovery of bid preparation costs]; *City of Atlanta v. J.A. Jones Const. Co., supra,* 398 S.E.2d at pp. 370-371 [low bidder whose bid is unfairly rejected entitled to reasonable bid preparation costs, but not lost profits]; *Telephone Associates v. St. Louis County Bd.* (Minn. 1985) 364 N.W.2d 378, 383 [allowing recovery of bid preparation costs, and expenses, including reasonable attorney fees, but not lost profits]; *State Mech. Cont. v. Village of Pleasant Hill* (1985) 132 Ill.App.3d 1027 [87 Ill.Dec. 532, 477 N.E.2d 509, 512-513] [aggrieved bidder not entitled to lost profits]; *City of Scottsdale v. Deem* (1976) 27 Ariz.App. 480 [556 P.2d 328, 330] [contractor not entitled to lost profits when unjustifiably denied a contract award]; *Owen*

lost profits. These jurisdictions generally reason that while the competitive bidding statutes are enacted for the public's benefit, not the aggrandizement of the individual bidder, allowing recovery of bid preparation costs encourages proper challenges to misawarded public contracts by the most interested parties, and deters public entity misconduct. These courts further reason, however, that allowing recovery of lost profits would injure the public twice—once in paying the unjustifiably higher price to the chosen bidder, and again when lost profits are awarded to the disappointed bidder that does not perform the work. (See, e.g., *Telephone Associates v. St. Louis County Bd.*, *supra*, 364 N.W.2d at p. 382.) Moreover, courts are disinclined to award lost profits in the absence of a contract. (See, e.g., *Owen of Georgia, Inc. v. Shelby Cty.*, *supra*, 648 F.2d at p. 1094.)

Indeed, while a few courts have stated in dicta that lost profits are a proper measure of damages when bad faith is demonstrated, only two cases have been brought to our attention in which lost profits were, as in this case, actually awarded to a disappointed bidder. (*City of Durant v. Laws Const. Co., Inc.*, *supra*, 721 So.2d at pp. 604-607 [upholding lost profits award]; *Bradford & Bigelow, Inc. v. Com.*, *supra*, 509 N.E.2d at pp. 35, 37 [same]; see *Marbucco Corp. v. City of Manchester*, *supra*, 632 A.2d at pp. 524-525 [damages on remand limited to bid preparation costs under promissory estoppel theory; lost profits available if public agency's conduct tantamount to bad faith]; *Peabody Construction Co., Inc. v. City of Boston* (1989) 28 Mass.App. 100 [546 N.E.2d 898, 902] [if allegations of bad faith demonstrated at trial, bidder may recover lost profits].) Thus, the Court of Appeal's conclusion that disappointed bidders may recover lost profits as damages is a distinctly minority position.

In reaching its conclusion, the Court of Appeal relied on two California cases, *C & K Engineering Contractors v. Amber Steel Co.*, *supra*, 23 Cal.3d 1, and *Signal Hill Aviation Co. v. Stroppe* (1979) 96 Cal.App.3d 627 [158 Cal.Rptr. 178]. Both of these cases involved disputes between private parties. In *C & K Engineering Contractors v. Amber Steel Co.*, *supra*, 23 Cal.3d at page 5, this court held an action based on promissory estoppel was equitable in nature, and therefore a party is not entitled to a jury trial. We did not address the issue of damages. In *Signal Hill Aviation Co. v. Stroppe*,

---

*of Georgia, Inc. v. Shelby Cty.* (6th Cir. 1981) 648 F.2d 1084, 1094, 1096 [under Tennessee law, disappointed bidder may recover, under promissory estoppel theory, bid preparation and protest costs, but not lost profits]; see also *Court St. Stk. Hse. v. County of Tazewell* (1994) 163 Ill.2d 159 [205 Ill.Dec. 532, 643 N.E.2d 781, 786] [agreeing in dicta with "overwhelming weight of authority" against allowing recovery of lost profits]; *Neilsen and Co. v. Cassia, etc.* (1982) 132 Idaho 317 [647 P.2d 773, 775] [bid preparation costs, but not lost profits, recoverable for breach of implied contract to consider each bid in accordance with all applicable statutes; recovery based on law of the case].)

*supra*, 96 Cal.App.3d at pages 632-633, the plaintiff corporation, in reliance on a promise to assign a lease of certain airport property, moved onto the property and commenced making rental payments, repairs, and improvements. The defendant, a corporate officer and director, ultimately refused to execute an assignment of the lease, and sublet the now renovated airport property to others for a monthly amount far in excess of what he was required to pay under the lease. (*Ibid.*) The trial court awarded the plaintiff those profits the defendant had and would receive from the lease under both promissory estoppel and constructive trust theories, and the Court of Appeal affirmed. (*Id.* at pp. 633-634, 639-641.) Neither case is relevant in assessing the competing concerns present in the public works context.

## DISPOSITION

The judgment of the Court of Appeal is reversed and the case remanded to that court for proceedings consistent with this opinion.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

Respondent's petition for a rehearing was denied August 23, 2000.