**CABLE & COMPUTER TECHNOLOGY INC., a Corp., Plaintiff—Appellee,**

v.

**LOCKHEED SANDERS INC., a Lockheed Martin Co., a Corp. d/b/a Sanders; Lockheed Martin Corporation, a Corp.; Lockheed Martin Federal Systems, a Corp., Defendants—Appellants.**

**Cable & Computer Technology Inc., a Corp., Plaintiff—Appellant,**

v.

**Lockheed Sanders Inc., a Lockheed Martin Co., a Corp. d/b/a Sanders; Lockheed Martin Corporation, a Corp.; Lockheed Martin Federal Systems, a Corp., Defendants—Appellees.**

Nos. 01–56722, 01–56795.
D.C. Nos. CV–97–05315–CM,
CV–97–05315–CRM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 17, 2002.

Decided Nov. 27, 2002.

Before CANBY, NOONAN and W. FLETCHER, Circuit Judges.

MEMORANDUM*

The defendants appeal portions of the district court's order affirming contract and tort damages in relation to the B–1B upgrade contract and affirming the punitive damage award. Cable and Computer Technology ("CCT") appeals portions of the order reducing the jury's damage award. We affirm the judgment of the district court.

This case comes to us following trial after our decision in *Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030 (9th Cir.2000). No new issue of law is raised by the appeal. The facts and proceedings are familiar to the parties. We summarize.

■ A jury has determined that Sanders, a subsidiary of Lockheed, entered into a contract with CCT to team in making a

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

bid to Boeing for the computer upgrade on the B–1B bomber project of the Air Force. That contract was no mere agreement to agree. It was found by the district court to have "no missing terms." In the course of the contract Sanders supplied information on CCT's pricing to Owego, another Lockheed subsidiary also bidding on the Boeing project. Less than two weeks before the bid was due, Sanders broke its contract with CCT, leaving it without a partner or time to find one. Owego won the contract. Faced with these facts and the testimony of Woodruff as to how Lockheed had worked for this result, the jury found the defendants liable for breach of contract and for substantial compensatory damages.

The district court reduced these damages because they included losses on two more contracts CCT contends it would have won if it had been successful on the B–1B bid. CCT appeals this reduction. We affirm the district court's ruling that these damages were too speculative.

■ Lockheed appeals the damages approved by the district court, arguing that CCT is no more than a disappointed bidder and should recover no more than the expenses incurred in its reliance on Sanders. *Copeland v. Baskin Robbins U.S.A.,* 96 Cal.App.4th 1251, 117 Cal.Rptr.2d 875 (2002); *Wilson v. Los Angeles County Metr. Transp.,* 23 Cal.4th 305, 96 Cal. Rptr.2d 747, 1 P.3d 63 (2000). CCT, however, is not a disappointed bidder but a disappointed party to a contract and entitled to full compensation for its breach.

■ The jury also found the defendants liable for interference with CCT's prospective economic advantage. The defendants argue that Sanders was not "a stranger" to the relationship promising the advantage. *Kasparian v. County of Los Angeles,* 38 Cal.App.4th 242, 252, 45 Cal.Rptr.2d 90 (1995). The district court, however, determined that the prospective relation was one that CCT would have enjoyed with Boeing. Although Sanders would have been benefitted as well, Sanders was a stranger in the special sense used by the California cases; it was not only the contract with CCT that Sanders breached, but Sanders also interfered with what CCT would have gained from winning. As the district court concluded, there was sufficient evidence of "independent wrongfulness" beyond the breach of contract to satisfy *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal.4th 376, 393, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995). As the jury found, Sanders had conspired with Owego to thwart CCT.

The jury also found the defendants liable for fraud. They moved for judgment notwithstanding the verdict. The district court denied the motion, noting that the Woodruff declaration was sufficient to support the finding and adding:

> CCT adduced evidence relating to Sanders' conduct following the articulation of its promise to CCT. For instance, CCT advanced evidence of conduct and statements by Dr. Ehtisham Siddiquit tending to show that he never intended for Sanders to actually team with CCT. CCT also introduced evidence indicating that Sanders' agents maneuvered within Lockheed to position Sanders so that it might lead a unified Lockheed bid. Such evidence tends to show that Sanders' promise to CCT was false at the time that it was made. Such circumstantial evidence is an accepted means of showing fraudulent intent. *See Tenzer v. Superscope,* 39 Cal.3d 18, 30, 216 Cal. Rptr. 130, 702 P.2d 212 (1985).

Significantly, the defendants do not appeal the fraud verdict and the district court's denial of their motion.

■ The defendants in their present brief attack the jury-awarded punitives of $25,735,000 against each of the two Lockheed subsidiaries, characterizing them as "gigantic" and out of line with other punitive awards in California. But the district court has already reduced the punitives to $12.8 million against Sanders and the same amount against Owego. The ratio of the punitives to compensatory damages is 5 to 1. The fraud itself was gigantic. The defendants' excuse that they caused "only economic" damage is cynical. The great corporate frauds disclosed in the past year caused "only economic" damage. They were nonetheless reprehensible, as was the conduct of Lockheed officers here. Add the net worth of Lockheed ($7 billion), *Neal v. Farmers Ins. Exchange*, 21 Cal.3d 910, 928, 148 Cal.Rptr. 389, 582 P.2d 980 (1978), and the damage done by it to its former partner CCT, and the punitives are deserved. The award is clearly constitutional under *BMW v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

An amicus, more friendly to the defendants than to the court, has chosen on this appeal to enter the fray and argue that substantive federal law should have applied. This contention is a curious one to raise five years after CCT brought its state law claims and after one appeal in this court and a trial. It is far too late to invoke a new theory of this variety.

For the reasons stated, the judgment of the district court is AFFIRMED.