Filed 12/11/13  Gilbert-Davis v. LA County Met. Transp. Auth. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| PATSY GILBERT-DAVIS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY,<br><br>    Defendant and Respondent. | B243193<br><br>(Los Angeles County<br>Super. Ct. No. VC057459) |

APPEAL from an order of the Superior Court of Los Angeles County, Margaret Miller Bernal, Judge.  Affirmed in part and reversed in part with directions.

The Law Office of David Lynn and David Lynn for Plaintiff and Appellant.

Veatch Carlson, Mark A. Weinstein, William J. Glazer and Gina Genatempo for Defendant and Respondent.

_____

## INTRODUCTION

Plaintiff Patsy Gilbert-Davis appeals from an order of dismissal entered after the trial court sustained without leave to amend a demurrer by defendant Los Angeles County Metropolitan Transportation Authority (the MTA) to her second amended complaint. She argues that she stated a claim for violation of the federal Americans with Disability Act (ADA) (Pub.L. No. 101-336; 42 U.S.C. § 12101 et seq.) and California's Disabled Persons Act (DPA) (Civ. Code, § 54 et seq.), or alternatively that the trial court should have granted her leave to amend.[1] We conclude that the trial court properly sustained the MTA's demurrer but should have granted Gilbert-Davis leave to amend. Therefore, we reverse in part with directions.

## BACKGROUND

On October 21, 2010 Gilbert-Davis filed this action against the MTA, alleging causes of action for premises liability and negligence. She alleged that on April 29, 2010 she entered the Green Line station in Norwalk and obtained a ticket from a ticket vending machine. On her way to the boarding area she tripped and fell on "uneven concrete," fracturing her right wrist. Gilbert-Davis alleged that the MTA negligently maintained the area where she fell, causing her to trip and fall and sustain injuries. MTA answered on December 22, 2010.

On October 14, 2011 Gilbert-Davis, with leave of court, filed a first amended complaint alleging causes of action for negligence, violation of the DPA, and violation of the Unruh Civil Rights Act. She alleged that she is visually impaired and walks with a white cane with a red tip. She alleged that the walkway where she tripped "is required to

---

[1] Gilbert-Davis does not challenge the trial court's decision to sustain without leave to amend the demurrer to her third cause of action for violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.).

but fails to comply with various provisions of the Americans With Disabilities Act of 1990 (Pub[.L. No.] 1001-336 [*sic*]) (ADA), Title II and Title III of the ADA." She further alleged that "the walkway violates the [ADA] in that there was an impermissible change in level of more than 1/4 inch with a slope steeper than 1:2 which was unbeveled . . . ." She claimed that this condition denied her "right to full and equal access to public facilities," in violation of Civil Code section 54. She further alleged that the MTA had actual or constructive notice of the violation.[2]

The trial court sustained the MTA's demurrer to the first amended complaint with leave to amend on uncertainty grounds because a cause of action against a public entity must be based on a statute, and Gilbert-Davis asserted claims for both negligence and statutory violations. The court also found that the negligence cause of action in the first amended complaint was uncertain because Gilbert-Davis cited both title II and title III of the ADA in her negligence cause of action but failed to allege a violation of any particular section. The court also noted that Gilbert-Davis did not sufficiently identify, in the second and third causes of action for violations of the Civil Code, the particular provisions on which her claims were based.

On January 17, 2012 Gilbert-Davis filed a second amended complaint that abandoned her negligence cause of action and alleged three statutory causes of action for violation of the ADA, the DPA, and Unruh Civil Rights Act. Gilbert-Davis alleged in her ADA claim that the MTA "owned, managed, maintained, and controlled the MTA 'Green Line' Station in the City of Norwalk." She further alleged that the "walkway that was solely for pedestrian traffic . . . was located near the turnstiles of the upper level of the Station. The walkway was the only access Plaintiff and members of the public had to the

---

[2]     Counsel for Gilbert-Davis stated in his declaration in support of his request for leave to file the first amended complaint that he got the idea of adding the statutory causes of action from his expert witness, Brad Avrit, who advised them that "the crack in the cement which caused Patsy Gilbert-Davis to fall was, upon careful measurements, more than ½ inch tall, was unbeveled and therefore violated at least one provision of the ADA."

3

Green Line platform . . . at the Norwalk station which was on the lower level of the Norwalk station. In turn, the platform was [the] only access Plaintiff, visually handicapped and the general public had to the Green Line Trains." Gilbert-Davis alleged that the "walkway was required to but failed to comply with various provisions of Title II of the Americans With Disabilities Act of 1990 (Pub[.L. No.] 1001-336 [*sic*])," and that the walkway violated the ADA because "it contained a change in level of more than 1/4 inch with a slope steeper than 1:2 which was unbeveled . . . ." She again alleged that the MTA had actual or constructive notice of the violation in time to fix it or warn of it, and that she "tripped and fell and fractured her wrist and injured her neck and back." Her second cause of action for violation of the DPA was based on the same allegations, and included references to various provisions of the DPA and Civil Code section 54, subdivision (c), violation of which she claimed was also a violation of the DPA.

The MTA demurred again. With her opposition to the demurrer, Gilbert-Davis submitted a proposed third amended complaint that revived her negligence and premises liability causes of action and restated her federal and state statutory claims.

At the April 18, 2012 hearing, counsel for Gilbert-Davis stated that the second amended complaint "sets forth the precise language . . . of the [ADA] that was violated." Counsel for Gilbert-Davis further stated, "The complaint, I regret to say, and the proposed amended complaint that I filed in an effort to make things easier . . . did not . . . cite the name of the code section." Counsel for Gilbert-Davis asked for leave to "amend to provide the precise identity of the code section," and identified the bases of the ADA claim as the "2010 Standards for Accessible Design under section 303.2, 303.3 and 303.4 as promulgated under title authority of the regulations 28 C.F.R. Part 36 revised July 1, 1994." The trial court took the matter under submission but allowed Gilbert-Davis to submit additional authority.

The trial court sustained the demurrer without leave to amend. The court stated in its written order: "In sustaining Defendant's demurrer to the [first amended complaint], this Court ruled that the pleading was uncertain in that it failed to allege statutory bases for its causes of action. The Court also indicated that the facts as alleged appeared

4

insufficient to establish liability. [¶] The [second amended complaint] is largely the same as the [first amended complaint] — Plaintiff has eliminated her cause of action for negligence and added dates to ¶¶ 5, 7, and 8; allegations regarding access to ¶ 7; and a description of Civil Code [section] 54 to ¶¶ 17-20 (with what is likely Plaintiff's attempt to cite the specific statutory bases of the [second amended complaint]). Plaintiff reorganized her third cause of action and combined several paragraphs but the actual content is more or less the same. Plaintiff still uses incorrect and overbroad citations — for example, Plaintiff continues to refer to the ADA as Public Law [No.] 1001-336 [*sic*] rather than the code citation, making it very difficult to determine the precise elements needed for Plaintiff's claims. Plaintiff still includes only conclusory allegations that Defendant was on notice and acted intentionally. [¶] The minimal and superficial changes do not remedy the problems previously identified by the Court. Accordingly, the demurrer is sustained. [¶] Plaintiff requests leave to amend and attaches a proposed Third Amended Complaint to her opposition. The proposed amended pleading still fails to remedy the defects previously identified by the Court. In light of Plaintiff's continued inability to amend the pleadings, leave to amend is DENIED." Gilbert-Davis appeals from the subsequent order dismissing her action.

## DISCUSSION

A.     *Standard of Review*

A demurrer tests the sufficiency of a complaint as a matter of law. On appeal from an order of dismissal following the sustaining of a demurrer without leave to amend, we review the pleading de novo to ascertain whether a cause of action has been stated as a matter of law. (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1238; *Rodriguez v. County of Los Angeles* (2013) 217 Cal.App.4th 806, 810; *Birke v. Oakwood Worldwide* (2009) 169 Cal.App.4th 1540, 1547.) "[W]e assume the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading, but not mere contentions, deductions, or

5

conclusions of law.  [Citation.]  We then determine if those facts are sufficient, as a matter of law, to state a cause of action under any legal theory.  [Citation.]"  (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751.)

We review the trial court's decision to deny leave to amend for an abuse of discretion.  (*Freeny v. City of San Buenaventura* (2013) 216 Cal.App.4th 1333, 1339.)  The trial court abuses its discretion in denying leave to amend when there is a reasonable possibility the existing defects can be cured by amending the pleading.  (*McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1206.)  The plaintiff has the burden of demonstrating that the defect can be cured.  (*May v. City of Milpitas* (2013) 217 Cal.App.4th 1307, 1324.)  This showing may be made for the first time in the reviewing court.  (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 275, fn. 14; *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386.)

        B.     *Cause of Action for Violation of the ADA*

"'"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals.  In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem."'  (*PGA Tour, Inc. v. Martin* (2001) 532 U.S. 661, 674-675 [149 L.Ed.2d 904, 121 S.Ct. 1879].)  'Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices."  [Citation.]  After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life."'  (*Id.* at p. 675.)  [¶]  'In the ADA, Congress provided that broad mandate. . . .  To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among

6

them employment (Title I of the Act), public services (Title II), and public accommodations (Title III).' (*PGA Tour, Inc. v. Martin, supra,* 532 U.S. at p. 675, fns. & citation omitted.)" (*Californians for Disability Rights v. Mervyn's LLC* (2008) 165 Cal.App.4th 571, 583.)

In the first cause of action of her second amended complaint, Gilbert-Davis alleged a violation of title II of the ADA (42 U.S.C. §§ 12131-12165),[3] which covers discrimination in the provision of public services. Title II has two parts. Part A (42 U.S.C. §§ 12131-12134) contains general provisions prohibiting discrimination. Part B (42 U.S.C. §§ 12141-12165) applies to discriminatory actions in public transportation provided by public entities.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (42 U.S.C. § 12132.) "'[Title II of the ADA] guards against both intentional discrimination and simple exclusion from services resulting not from intentional discriminatory acts, but rather from inaction, thoughtlessness, or equal treatment when particular accommodations are necessary.'" (*McGary v. City of Portland* (9th Cir. 2004) 386 F.3d 1259, 1267, quoting *Presta v. Peninsula Corridor Joint Powers Bd.* (N.D.Cal. 1998) 16 F.Supp.2d 1134, 1136; cf. *Gunther v. Lin* (2006) 144 Cal.App.4th 223, 253, overruled on another ground in *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 678.) "Since the ADA was designed to address indifference to or benign neglect of the plight of the disabled, outright intentional discrimination is not required under title II of the ADA." (*Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 749.) If, however, the plaintiff seeks monetary damages for the alleged ADA violation, as Gilbert-Davis does here, the plaintiff must demonstrate intentional discrimination by the defendant.

---

[3] Gilbert-Davis did not, as she intimates in her opening brief, allege a violation of title III of the ADA in her second amended complaint. She specifically referenced only title II. In any event, as explained below, title III does not apply to this case.

(*Duvall v. County of Kitsap* (9th Cir. 2001) 260 F.3d 1124, 1138.)  The plaintiff, however, need only prove "deliberate indifference," which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood."  (*Id*. at p. 1139.)

"'To state a claim of disability discrimination under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.'  [Citation.]"  (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1252.)

Gilbert-Davis does not mention the elements of an ADA cause of action in her opening brief, let alone make a reasoned attempt to demonstrate that she pleaded all of the necessary elements.  As the appellant, Gilbert-Davis has the burden of demonstrating error affirmatively.  "In order to prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error . . . [by] show[ing] that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer.  [Citation.]"  (*Scott v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 752; accord, *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 244.)  She has failed to make this showing.  Therefore, we reject her challenge to the trial court's order sustaining the MTA's demurrer to her ADA cause of action.


C.      *Cause of Action for Violation of the DPA*

In her second amended complaint Gilbert-Davis attempted to state a cause of action for violation of the DPA that is derivative of her ADA cause of action.  She specifically referenced Civil Code section 54, subdivisions (a) and (c), as well as section 54.1.

8

Civil Code section 54, subdivision (a), provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Civil Code section 54.1, subdivision (a)(1), states that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to . . . privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided) . . . subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Subdivision (c) of Civil Code section 54 states that "[a] violation of the right of an individual under the Americans with Disabilities Act of 1990 (Pub[.L. No.] 101-336) also constitutes a violation of this section." (See *Baughman v. Walt Disney World Co.* (2013) 217 Cal.App.4th 1438, 1446 ["'the DPA incorporates the ADA to the extent that "A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Pub[.L. No.] 101-336) also constitutes a violation of this section"'"].)

As best as we can discern, Gilbert-Davis does not argue on appeal that she stated a cause of action for violation of the DPA that is independent of her ADA cause of action, and her position remains that her DPA claim is entirely derivative of her ADA claim. Gilbert-Davis argues only that she stated a claim for violation of the DPA because she stated a claim for violation of the ADA. In other words, Gilbert-Davis concedes that her DPA and ADA claims stand or fall together. Therefore, they fall together. (Cf. *Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800 ["[w]here a trial court has concluded the plaintiff did not state sufficient facts to support a statutory claim and therefore sustained a demurrer as to that claim, a demurrer is also properly sustained as to a claim for declaratory relief which is 'wholly derivative' of the statutory claim"].)

9

D.    *Leave To Amend*

The only issue remaining is whether the trial court abused its discretion in denying Gilbert-Davis leave to amend.  Gilbert-Davis argues that she can cure the deficiencies in her statutory causes of action by alleging "that the unbeveled 'change in level' was more than one and a quarter inches, or almost six times the maximum height differential that is permitted by the ADA.  Plaintiff can allege that the height differential violates the Standards for Accessible Design, Sections 303.3 and promulgated under and as published in 28 CFR Part 36, revised July 1, 1994 issued by the Department of Justice."

Section 36.101 provides that the purpose of Part 36 is "to implement title III" of the ADA (42 U.S.C. § 12181), which applies to public accommodations and services operated by private entities.  The MTA, however, is a public entity.  (See *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 317; *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 243.)  Title III does not apply to public entities.  (*Disabled Rights Action Comm. v. Las Vegas Events* (9th Cir. 2004) 375 F.3d 861, 876-877; see *Bloom v. Bexar County, Tex.* (5th Cir. 1997) 130 F.3d 722, 726 ["ADA Title III expressly does not apply to public entities"]; *DeBord v. Board of Educ. of Ferguson-Florissant* (8th Cir. 1997) 126 F.3d 1102, 1106 ["Title III of the ADA applies to private entities providing public accommodations . . . not to public entities"].)  Therefore, Gilbert-Davis' reliance on Part 36 of 28 Code of Federal Regulations is misplaced, and her proposed amendment still will not state an ADA claim against the MTA.

Section 12181 of title 42 of the United States Code, the only section of the ADA cited by Gilbert-Davis, is similarly inapplicable.  This section is part of subchapter III, entitled "Public Accommodations and Services Operated by Private Entities."  Again, because the MTA is public entity, section 12181 does not apply, and an amendment based on this statute also will not state a claim for violation of the ADA.[4]

---

[4]    The design standards that Gilbert-Davis cited to the trial court and that she references in her opening brief can be found in 39 Code of Federal Regulations part 1191.

10

"A court's sustaining a demurrer without leave to amend is appropriate when, based on "'"the nature of the [complaint's] defects and [the plaintiff's] previous unsuccessful attempts to plead,"'" it is improbable the plaintiff can state a cause of action." (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 534.) This principle applies to Gilbert-Davis' statutory causes of action. Because Gilbert-Davis has not met her burden of demonstrating that she can cure the defects in her ADA and DPA causes of action (*May v. City of Milpitas*, *supra*, 217 Cal.App.4th at p. 1324),[5] the trial court did not abuse its discretion in denying her leave to amend these causes of action (*McAllister v. Los Angeles Unified School Dist.*, *supra*, 216 Cal.App.4th at p. 1206).

Gilbert-Davis can amend her complaint, however to state claims for premises liability and dangerous condition negligence under Government Code section 835.[6]

---

They are part of the Americans with Disabilities Act Access Guidelines (ADAAG). Guideline 303.1 provides that "[w]here changes in level are permitted in floor or ground surfaces, they shall comply with 303," entitled "Changes in Level." Section 303.2 provides that "[c]hanges in level of ¼ inch (6.4 mm) high maximum shall be permitted to be vertical." Section 303.3 states that "[c]hanges in level between ¼ inch (6.4 mm) high minimum and ½ inch (13 mm) high maximum shall be beveled with a slope not steeper than 1:2." Gilbert-Davis, however, provides no explanation of how these guidelines apply in this case.

[5]    Gilbert-Davis does argue that she can amend her DPA cause of action to state a claim other than stating how she would amend her ADA claim.

[6]    Government Code section 835 provides that "[e]xcept as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

11

Although Gilbert-Davis decided to abandon her negligence claim between the first amended complaint and the second amended complaint, the trial court never sustained a demurrer to that cause of action.[7] We interpret her inclusion in her proposed third amended complaint, submitted in response to the MTA's demurrer to the second amended complaint, of causes of action for negligence and dangerous condition of public property as an inartful request for leave to amend to state or revive those causes of action. We agree with the MTA's acknowledgement that "it would appear that the original claim for alleged premises liability, since abandoned, may have been [the] appropriate cause of action . . . ." Therefore, Gilbert-Davis may have leave to amend to state negligence causes of action for premises liability and dangerous condition of public property.

---

[7] Although the first cause of action in the first amended complaint was entitled negligence, it was based on a violation of the ADA.

## DISPOSITION

The order of dismissal is reversed. The matter is remanded to the trial court with directions to vacate its order sustaining the MTA's demurrer to the second amended complaint without leave to amend and to enter a new order sustaining the demurrer with leave to file a third amended complaint alleging only negligence causes of action for premises liability and dangerous condition of public property. The parties are to bear their costs on appeal.

SEGAL, J.*

We concur:

PERLUSS, P. J.

ZELON, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.