Filed 10/9/14  Smith v. Karabinus CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MATTHEW J. SMITH et al., | F068796 |
| Interveners and Appellants, | (Super. Ct. No. 01FL00615) |
| v. | |
| DAVID KARABINUS, | **OPINION** |
| Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County. Matthew J. Gary, Judge.

Matthew J. Smith, in pro. per. for Interveners and Appellants.

Barth Daly, Thomas W. Barth and Angie H. Palmerin for Respondent.

-ooOoo-

In the family law proceedings below, the trial court appointed attorney David Karabinus (respondent) in 2007 to represent the parents' minor child therein.[1] The same order that appointed respondent specified that his fees were to be paid by the mother. Nevertheless, from August 2007 through late 2010, respondent billed the Sacramento Superior Court (the Superior Court),[2] *not* the mother, for the payment of his fees, and the Superior Court paid the bills as submitted, totaling approximately $9,000 in attorney fees that were paid to him by the Superior Court. When the father's former attorney, Katherine Codekas, and her husband, Matthew Smith (together appellants), learned that respondent had billed the Superior Court in apparent contravention of the court's order, they filed a lawsuit against respondent on behalf of the State of California for treble damages and civil penalties under the provisions of the California False Claims Act (the False Claims Act; Gov. Code, § 12650 et seq.).[3] In December 2012, one month before the scheduled trial date in the False Claims Act action, respondent filed a motion in the family law case asking the trial court to retroactively correct or modify the 2007 order regarding the source of payment of his fees. The motion was made on the ground that, because of certain assurances communicated by the court clerk to respondent's secretary

---

[1] Vanessa Fontana is the minor child's mother (the mother); Paul Cortopassi is the minor child's father (the father). Their minor child is I.C. Fontana.

[2] Under Family Code section 3153 and California Rules of Court, rule 5-241, if the trial court appoints an attorney for a minor child and the parents cannot afford to pay the attorney fees, the county or the superior court must pay the fees. The funding to pay such fees ultimately comes from the State of California and is part of the state budget. (Gov. Code, § 77003, subd. (a)(4).) In the instant appeal, the parties sometimes referred to the government agency that respondent billed for payment of his fees as *the court* and other times as *the county*. In the present context, the terms may be used interchangeably for purposes of the issues presented herein. For convenience, we generally refer to this payment source as the Superior Court.

[3] The False Claims Act lawsuit was filed in Sacramento Superior Court as case No. 34-2011-00098148 on February 28, 2011. That lawsuit was stayed by the trial court pending the outcome of the present appeal. We grant appellants' request for judicial notice of several pleadings and orders on file in the False Claims Act action.

2.

at the outset of respondent's representation of the minor child, the Superior Court had effectively agreed or represented that (i) a revised order would be issued declaring that the Superior Court would pay respondent's fees and (ii) respondent could send his bills to the Superior Court for payment. Appellants intervened in the family law case and opposed respondent's motion, arguing among other things that the trial could not use its nunc pro tunc powers to "change the past" and thereby improperly negate an element of appellants' False Claims Act lawsuit against respondent.

The trial court granted the relief sought in respondent's motion and held that the Superior Court, not the mother, was the proper source for the payment of respondent's fees during the relevant time period. Appellants promptly moved to vacate the order granting respondent's motion. The trial court denied said motion to vacate,[4] and appellants now appeal from that order.[5] We conclude that, in light of the trial court's statutory authority regarding the payment and allocation of fees for a court-appointed minor's counsel in family law proceedings—which issue the trial court also expressly reserved in its appointment order—the trial court did not abuse its discretion when it decided to effectively reallocate such fees under the unique facts and circumstances of this case. Accordingly, we affirm the order below.

---

[4] The trial court's order was phrased in the alternative. The alternative result was to grant appellants' motion in part by setting aside the prior order and issuing a new order declaring that, in August 2007, the Superior Court had agreed to pay respondent's fees and, accordingly, it was proper for respondent to submit his attorney fees bills to the Superior Court for payment. In terms of outcome, this alternative result was essentially the same as denying the motion to vacate.

[5] The appeal was transferred to this court from the Third Appellate District by order of the Supreme Court issued on January 27, 2014.

## FACTS AND PROCEDURAL HISTORY

*Events Preceding Respondent's Appointment*

On November 22, 2002, a paternity judgment was entered below in the family law proceedings between the mother and the father, with the judgment incorporating additional orders relating to custody and visitation of the minor child. Four and one-half years later, on May 2, 2007, the parties and their attorneys returned to the trial court to resolve certain issues that had arisen relating to the minor child. A private mediator recommended to the trial court that it order an Evidence Code section 730 evaluation, appoint a special master and appoint an attorney to represent the minor child.

At the May 2, 2007, hearing to consider the mediator's recommendations, the mother's attorney asked the trial court to grant all three of the recommendations. The father's attorney[6] agreed to the Evidence Code section 730 evaluation if the parties split the cost thereof, but asserted that the appointment of minor's counsel was not necessary, "nor can the parties even afford it." At that point, the trial court expressed its inclination to defer the issue of whether to appoint minor's counsel until after "the 730 evaluation," since such evaluations are usually an expensive process. The mother's attorney strongly disagreed with that prospect, stating: "That child needs to tell an independent party, her own counsel, what's—what's going on. *My client's prepared to pay for that*." (Italics added.) In seeking confirmation of what the mother's attorney was offering, the trial court asked: "[Your] client's willing to pay for [minor's counsel]?" The mother's attorney answered, "Absolutely." If the mother was going to pay the attorney fees, the father's attorney had no remaining objection to the appointment of minor's counsel—as long as it was also understood that there could be no future "reallocation" that would shift

---

[6]   As noted, the father's attorney of record was Katherine Codekas—one of the two plaintiffs prosecuting the False Claims Act lawsuit against respondent.

4.

the expense over to the father.  As to the name of a particular attorney to represent the minor, both parties agreed that David Karabinus would be acceptable.

*Terms of Respondent's Appointment Pursuant to 2007 Court Order(s)*

At the conclusion of the May 2, 2007, hearing described above, the trial court pronounced its orders from the bench, including the following:  "[The] Court appoints minor's counsel.  Fees to be paid by [the mother] without reallocation.  [The] Court appoints David Karabinus."  A minute order issued that same day, which recited the trial court's order in identical terms.  The trial court subsequently filed a "FINDINGS AND ORDER AFTER HEARING," concerning the May 2, 2007, hearing, which document reiterated the appointment order in the same terms as was expressed by the trial court at the hearing.[7]

On June 7, 2007, a formal written order appointing counsel for the minor child was signed and entered by the trial court.  The June 7, 2007, order appointed respondent pursuant to Family Code section 3150 et seq., and spelled out in comprehensive terms the rights and responsibilities of minor's counsel in the matter.  Paragraph 7 of the June 7 order further stated:  "*The Court reserves jurisdiction to make such orders as may be appropriate for the payment and allocation of fees and costs of child(ren)'s counsel upon submission of declaration, or motion by minor*[']*s counsel*.  Pending further order, the parties are ordered to advance the following payments directly to the child(ren)'s counsel against such fees and costs:  [¶] … [¶]  … Minor's counsel fees to be paid by the [mother]."  (Italics added.)

*Respondent Submits Fee Invoices to the Superior Court for Payment*

In June and August 2007, respondent and/or his secretary sent correspondence to the other counsel in the case, expressly acknowledging receipt of the trial court's order

---

**7**     For unknown reasons, the "FINDINGS AND ORDER AFTER HEARING" was not signed and filed until December 14, 2007.

5.

appointing respondent as the minor child's attorney. The same letters also acknowledged the fact that, pursuant to the order, respondent's fees were to be paid by the mother. For example, a letter dated August 15, 2007, from respondent to the respective counsel for the mother and the father stated: "I see that in the order appointing counsel for whatever reason the parties agreed that all minor[']s counsel fees are to be paid by [the mother]. Because of that please let me know where those monthly billings are to be sent."

In August 2007, despite the terms of the order and the acknowledgement thereof in respondent's correspondence, respondent's secretary began the process of submitting invoices for respondent's attorney fees to the Superior Court for payment. The asserted explanation for doing so was set forth in the declarations of (i) respondent's secretary and (ii) respondent, filed in support of respondent's motion to correct or modify the prior order. We now review the substance of these declarations.

*Declaration of Respondent's Secretary*

Respondent's secretary stated that she initially set up the billing the way she did because it was in accordance with the "common practice" in the office, because "[i]n every other case in which [respondent] was appointed as minor's counsel, his fees were billed to the County." (We note again the interchangeable descriptions of the payment source as being the county or the Superior Court—see fn. 2, *ante*.) Sometime in August 2007, when respondent returned to the office on a regular basis following heart surgery and more carefully reviewed the file in this case, he instructed his secretary to contact the court and inform the court that he could not serve as minor's counsel under the conditions of the order. According to the secretary: "[Respondent] was concerned about the anticipated, substantial amount of work, combined with the likelihood that the fees would be a heavy burden for any parent to pay, and would likely go unpaid. He told me that he would never have agreed to work as minor's counsel on this case, if he had known that the County would not be paying fees."

6.

Respondent's secretary then stated in her declaration that the following conversation took place in August 2007 between herself and the court clerk in the family law department: "As requested by [respondent], I contacted the Court by calling the Court clerk for the Department in which the case was assigned. I explained the request by [respondent] to be taken off of the case as minor's counsel, because he would not have agreed to the assignment in the first place, if the fees were not being paid by the County. I explained that [respondent] was adamant that he could not serve as minor's counsel in the case if one of the parents were ordered to pay his fees. The clerk stated that the Court really wanted [respondent] on the case, and she would talk to the judge and get back to me. She then stated that we should 'Go ahead and bill the County, and she would discuss it with the judge and reissue a revised Order of Appointment, to show that the fees would be paid by the County.' I informed [respondent] about the response by the Court clerk, that the Court wanted him to remain on the case as minor's counsel and would take the necessary action to amend the order appointing him, so that the County would pay his fees. Based on that information and the expectation that the Court would be revising the appointment order, I billed the County for [respondent's] fees in the case. I did not follow up with the Court clerk to ensure that the Court reissued the appointment order, as she said they would do. Based on my personal knowledge about the adverse effects of [respondent's] heart attack and subsequent medical treatment on his memory, I believe that he forgot about following up with the Court about the intended change of the Court order, to have the County pay his fees."

*Declaration of Respondent*

Respondent's declaration began with the fact that on May 6, 2007, he "underwent a six-way heart bypass surgery following a heart attack." He reported that he was out of the office "nearly all of the months of May, June and July 2007" while recuperating from the heart attack and surgery.

7.

Respondent returned on more of a full-time basis to his office "in late July or early August" 2007. When he more closely reviewed the file in the present case sometime in August 2007, he became concerned about the arrangement that the mother was responsible to pay his fees. As summarized by respondent in his declaration: "My concerns relating to the appointment in this case included my knowledge that the matter would involve substantial, contentious proceedings, because of the involvement of Ms. Codekas as one of the opposing counsel.… Based on my concerns about the appointment, including the apparent inability of the mother to pay fees, I directed my secretary … to communicate with the Court, to request my withdrawal from the appointment. She contacted the Court and informed me of her communication with the Court clerk, as described in more detail in her declaration. Based on that information from the Court, I understood that a minute order or some other action would be taken by the Court to revise the payment of fees, so that the County would pay them. Accordingly, my office submitted the periodic invoices to the County for payment."

Respondent stated that in November 2010, he was informed by a county officer involved in the payment of attorney fees invoices that the county would no longer make payments of his fees in this case because an audit revealed that the original order had directed that the fees were to be paid by the mother. Respondent wrote to the county officer, asking her to review the court file more carefully because respondent believed there should be a minute order indicating the county would pay the fees. Thereafter, on January 6, 2011, respondent sent a letter to the other counsel in the case, informing them that the county would no longer be paying his fees.

*False Claims Act Lawsuit Filed*

On February 28, 2011, appellants filed their False Claims Act lawsuit against respondent. The complaint alleged that despite respondent's knowledge of the terms of the trial court's order that the mother was responsible for payment of his fees as minor's counsel, he submitted invoices for payment of his fees "to the … Superior Court."

Respondent allegedly knew that he was not entitled to payment of his fees by the Superior Court, yet he allegedly falsely submitted his invoices for payment in violation of the False Claims Act. As damages, appellants sought (as "relators" on behalf of the State of California) an award of treble damages and civil penalties (of $5,000 to $10,000) for each of the 28 or more invoices submitted.

*Respondent's Motion*

On December 12, 2012, respondent filed his motion in the family law case seeking to modify or correct the original appointment order.[8] Respondent's memorandum of points and authorities stated that he was requesting "an order … correcting the Order Appointing Counsel for Minor in the case, to reflect that minor's counsel fees were intended by the Court to be paid by the County of Sacramento." The motion was based on the alleged fact that in August 2007, "the Court … communicated its intent to issue an order directing that the minor's counsel fees resulting from the appointment of [respondent] to represent the minor would be chargeable to the County. Relying on that intended order, [respondent] billed his fees to the County between approximately August 2007 and October 2010, and the County paid him fees for his work as minor's counsel." Respondent further argued that denying relief could result in an injustice: "Under the circumstances of this case, where the Court plainly communicated its intent to modify the order in August of 2007, to direct that fees be paid by the County, there is a potential of manifest injustice if [respondent] were held civilly liable for an alleged wrong that is directly contrary to the Court's intent in the instant case."[9] The supporting evidence for the motion consisted of the declarations of respondent and his secretary, as described

[8]    When respondent's motion was filed, the trial date of the False Claims Act action was approximately one month away. (See request for judicial notice, exhibit No. 2.)

[9]    In making this point, respondent noted that his fee payments were only $9,000, but the scope of his potential liability under the False Claims Act complaint was "approximately $325,000," once treble damages and potential maximum civil penalties were totaled.

above. As legal authority for the requested relief, respondent's motion contended the trial court had inherent authority to correct its orders nunc pro tunc, and/or to otherwise vacate or modify its prior orders and to enter a new order under Code of Civil Procedure sections 663 and/or 473.[10]

Although not parties, appellants intervened in the family law case below and filed opposition to respondent's motion.[11] Appellants argued in their opposition that the factual premise of respondent's motion (i.e., the alleged assurances by the clerk to respondent's secretary) was not credible. Moreover, appellants argued that it would be improper to use a nunc pro tunc order as a means of changing the past, since the sole function of a nunc pro tunc order is to correct clerical or drafting errors in the order or judgment, so that the order or judgment will reflect the substance of the court's actual decision. (See *Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 890-891.) Further, appellants pointed out that section 663 did not apply, since the 2007 order appointing respondent as minor's counsel was not the result of a legal or factual error and, in any event, the motion was beyond the time limitation of section 663.[12]

The hearing was held on January 9, 2013. At the hearing, the trial court noted its belief that it had ongoing jurisdiction to reallocate the fees for minor's counsel based on (i) Family Code section 3153 and the California Rules of Court[13] implementing that section and (ii) the fact that the trial court had expressly retained jurisdiction to reallocate

---

**10** Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

**11** Although appellants intervened by filing opposition and appearing to argue the matter at the hearing, the record does not show a formal motion to intervene was made.

**12** We note the time limitations of section 473 would also have expired with respect to the 2007 appointment order.

**13** Unless otherwise indicated, all further references to rules are to the California Rules of Court.

10.

in its June 7, 2007 written order. The trial court also noted that it had reviewed every "I&E" it could find in the file, and it was clear that the mother "has had no ability to pay" minor's counsel's fees "in addition to all of the other costs the parties were paying for the mental health people." Additionally, the trial court noted from the bench that respondent's attorney services for the minor were, in retrospect, clearly necessary. Finally, at the end of the hearing, the trial court concluded that appellants did not have standing to oppose the motion. The trial court granted respondent's motion.

In its terse written order of January 9, 2013 (the January 9 order), the trial court stated that the 2007 orders "are *corrected* to show" that minor's counsel's fees are to be paid by the Superior Court. (Italics added.) The January 9 order also stated the trial court's finding that respondent's assertion of "an understanding [with] the Court" that the Superior Court would pay "is correct," adding that "[t]he court has honored counsel's bills all along, [and] paid them."

*Appellants' Motion to Vacate*

Appellants promptly challenged the January 9 order by filing a motion to vacate pursuant to section 663. Appellants requested that the trial court vacate the January 9 order and enter a new order denying respondent's motion. Appellants argued the trial court lacked authority to grant the relief that it did because it constituted an improper exercise of the trial court's nunc pro tunc powers and, additionally, no adequate proof of an actual agreement with the Superior Court had been shown.

In his opposition to the motion to vacate, respondent argued the January 9 order was adequately supported based on the trial court's retained jurisdiction to allocate payment of minor's counsel's fees. Additionally, respondent asserted that appellants were not aggrieved by the January 9 order and thus they had no standing to file the motion to vacate. That is, respondent argued that "[appellants] have no interest in the decision by the Court regarding proper allocation of minor's counsel fees among the parties and the County under Family Code Section 3153."

11.

Appellants' motion to vacate was heard by the trial court on February 25, 2013. There was extensive oral argument, after which the trial court took the matter under submission. On March 12, 2013, the trial court issued its written order regarding the motion to vacate. The order first denied appellants' motion on the ground that appellants lacked standing, since "the [January 9] order addresses the narrow issue of whom, between the parties and the court, pays minor's counsel fees," concerning which appellants had no right or interest. In the alternative, the trial court held that even if appellants had standing, the motion would be denied because the trial court did not grant a nunc pro tunc order, but merely clarified that there was in fact "an agreement in August 2007 between minor's counsel and … the court that minor's counsel's fees were to be court paid." Finally, the trial court further held that *even if* appellants had standing *and* the January 9 order was an impermissible nunc pro tunc order, to that extent the trial court "grants" appellants' motion (in part) but "enters the following [new] order instead:"

> "Based upon the August 2007 agreement between the court and [respondent] that [respondent's] fees would be paid by the court, and based upon the court's knowledge and consent to [respondent's] billing the court for his services starting in or about August, 2007, and based upon the court and [respondent] each honoring this agreement through performance and payment, and based upon the court's failure to revise and/or amend the June 7, 2007, Order as it represented to [respondent] that it would in August, 2007, and based upon … the court's reserved jurisdiction to allocate minor's counsel's fee as expressed in the June 7, 2007, formal Order, and as expressed in statute and Rule of Court, the court clarifies the record to indicate that [respondent's] fees for representing the minor child in this case were to be paid by the court from August, 2007, forward, and that [respondent] was, in fact, authorized to bill the court for his services."

After the above order denying (or partially granting) appellants' motion to vacate, appellants timely filed their notice of appeal.

## DISCUSSION

## I.     Appellants' Standing to Intervene and File Motion to Vacate

A threshold issue is whether appellants had standing to move to set aside the January 9 order.  Appellants contend that they were entitled to intervene and file their motion to vacate, even if they were not parties to the family law case.  On the record before us, we agree.

"[O]ne who is legally 'aggrieved' by a judgment may become a party of record and obtain a right to appeal by moving to vacate the judgment pursuant to … section 663." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736.)  "A nonparty whose rights or interests are injuriously affected by a judgment or an appealable order may file a nonstatutory motion to vacate the judgment or order, and may appeal the denial of such a motion.  [Citations.]  A motion to vacate in the trial court provides a means by which such a nonparty may become a party to the litigation with a right of appeal without the need to formally intervene in the action.  [Citation.]  [Citations.]" (*Henry M. Lee Law Corp. v. Superior Court* (2012) 204 Cal.App.4th 1375, 1382. fn. omitted; accord, *People ex rel. Reisig v. Broderick Boys* (2007) 149 Cal.App.4th 1506, 1516.)

Here, the key question is whether appellants' rights or interests were injuriously affected by the January 9 order.  The interest must be "'"immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment."'  [Citation.]" (*County of Alameda v. Carleson*, *supra*, 5 Cal.3d at p. 737.)  We conclude that appellants' interest satisfies this test for the reasons discussed below.

In appellants' False Claims Act action, appellants "stand[] in the shoes" of the State of California, the latter being the public entity that funds court operations— including funding needed for payment of court-appointed minor's counsel under Family

13.

Code section 3150.[14] (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1214 [if the public entity does not intervene, the qui tam plaintiff "stands in the shoes" of the state or political subdivision].) Under the False Claims Act, a person may (as here) "bring a qui tam action for and in the name of the state (if state funds are involved)." (*State ex rel. Harris v. PricewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220, 1228.) If no prosecuting official intervenes in the action, "the qui tam plaintiff may receive up to 50 percent of the proceeds, with the remainder going directly to the defrauded entity or entities." (*Ibid.*, citing Gov. Code, § 12652, subd. (g)(3).) Since the provisions of the False Claims Act allow for recovery of treble damages plus civil penalties (of $5,000 to $10,000) for each distinct violation (Gov. Code, § 12651, subd. (a)),[15] it appears that appellants' potential recovery against respondent was both pecuniary in nature and substantial in amount.

Moreover, appellants' interests were immediately affected by the January 9 order because the success of their False Claims Act case depended on whether respondent "[k]nowingly" presented "false or fraudulent claim[s]" (Gov. Code, § 12651, subd. (a)(1))[16] when he submitted his invoices to the Superior Court for payment in contravention of the terms of the 2007 order appointing him as minor's counsel. Thus, when the trial court held in its January 9 order that based on "an understanding [with] the Court" in August 2007, respondent was permitted to submit his attorney fees invoices to the Superior Court for payment during the relevant time period, the trial court effectively

---

**14** On this point, see Government Code section 77000 et seq., including section 77003, subdivision (a)(4).

**15** The amounts recoverable as civil penalties have been increased (Stats. 2012, ch. 647, § 2). The increases took effect after the orders below.

**16** The term "knowingly" or "knowing" as used in the False Claims Act means that a person either has "actual knowledge" of the relevant information, or acts in "deliberate ignorance" or a "reckless disregard" of the truth or falsity thereof. (Gov. Code, § 12650, subd. (b)(3).)

14.

established an affirmative defense to the False Claims Act lawsuit. Indeed, respondent's moving papers conceded that one purpose for his motion was to establish such a defense in his favor: "By correcting the Order Appointing Minor's Counsel, to show the Court's true intent that [respondent] was authorized and directed to bill his services to the County, the False Claims Act Complaint will be subject to the complete defense that the invoices to the County cannot be determined to be 'false claims.'"[17]

Under all of the circumstances, we conclude that appellants were sufficiently aggrieved by the January 9 order that they had standing to bring their motion to vacate and, by the same reasoning, to maintain the present appeal. (See § 902.)

## II. Standard of Review

Appellants have appealed from the trial court's order denying (and/or partially granting) the relief sought in their motion to vacate under section 663. Section 663 provides in relevant part: "A judgment or decree, when based upon a decision by the court … may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered" if there was an "[i]ncorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts." The statutory language means that "the motion may be made whenever the trial judge draws an incorrect legal conclusion or renders an erroneous judgment upon the facts found by it to exist." (*County of Alameda v. Carleson*, *supra*, 5 Cal.3d at p. 738.) Appellate review of a denial of a motion under section 663 is ordinarily limited "to a determination of whether the conclusions of law and judgment are consistent with and

---

**17** Once his motion was granted, respondent moved for judgment on the pleadings in the False Claims Act case on the ground that the January 9 order eliminated an essential element from the False Claims Act cause of action. The trial court in that case did not rule on the motion for judgment on the pleadings, but stayed the False Claims Act action pending the outcome of this appeal. (See request for judicial notice, exhibits Nos. 3 and 4.)

15.

supported by the findings of fact [citations]." (*Newbury v. Civil Service Commission* (1940) 42 Cal.App.2d 258, 259.)

Whether the trial court has drawn an incorrect legal conclusion from the facts found is a question of law (see *Kaiser v. Dalto* (1903) 140 Cal. 167, 169) to which we apply de novo review. Likewise, issues concerning the interpretation or application of a statute present questions of law subject to our independent review. (*Howard Contracting, Inc. v. G.A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 49.) However, to the extent that issues relating to the exercise of discretion are raised on a motion to vacate, to that extent we review under the abuse of discretion standard and will affirm if the trial court exercised its discretion along legal lines supported by any substantial evidence. (See, e.g., *National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 524; *In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 412.)

**III.    The Nunc Pro Tunc Issue**

In their motion to vacate, appellants challenged the January 9 order because, among other things, the court entered a nunc pro tunc order without a proper basis for doing so. One sentence of the January 9 order stated, "The orders of 5/2/07, 6/7/07 & 12/14/07 are corrected to show [minor's counsel's fees] to be court paid." Appellants contend on appeal, as they did in their motion to vacate the January 9 order, that the trial court erred by purporting to correct what these 2007 orders actually said. We agree with appellants.

Although a trial court may issue a nunc pro tunc order to correct a clerical error in the form or record of the court's order or judgment, it may not "make … an order or judgment that was never, in fact, given." (*Haynes v. Los Angeles R.R. Corp.* (1927) 80 Cal.App. 776, 780.) "'It is only when the form of the judgment fails to coincide with the substance thereof, as intended at the time of the rendition of the judgment, that it can be reached by a corrective nunc pro tunc order.' [Citations.]" (*Hamilton v. Laine*, *supra*, 57 Cal.App.4th at p. 890, citing *Estate of Eckstrom* (1960) 54 Cal.2d 540, 544-545.) Here,

16.

there was no evidence presented in the trial court to suggest that when respondent was initially appointed as minor's counsel at the May 2, 2007, hearing, and the written orders were made to record the terms of that appointment, the trial court *actually* intended or decided that the Superior Court would pay respondent's fees, not the mother. In short, no clerical error was shown in the form or record of the pertinent 2007 orders memorializing the terms of respondent's initial appointment. Therefore, based on the above authorities, to the extent that the trial court's January 9 order presumed to "correct" those 2007 orders to make them say something that they were not intended to say when originally made, the trial court clearly erred.

But that is not the end of the story. In ruling on appellants' motion to vacate, the trial court clarified and made explicit that there were alternative grounds for the core relief granted that did not rest on the making of nunc pro tunc orders. In its written order regarding appellants' motion to vacate, the trial court acknowledged the "unfortunate" sentence in the January 9 order. The trial court explained that its principal intent was not to correct the content of prior orders as such, but rather to *clarify* the record of the proceedings in the case to indicate "that there was, in fact, an agreement in August 2007 between minor's counsel" to the effect that "minor's counsel's fees were to be court paid." In the alternative, the trial court held that to the extent the January 9 order was an impermissible nunc pro tunc order, the trial court "grants" the appellants' section 663 motion in part and "enters" another, alternative order instead. As noted earlier herein, this alternative order held that "from August, 2007 forward," respondent's fees "were to be paid by the court" and respondent was "authorized to bill the court for his services." The alternative order was explicitly founded on the trial court's reserved and ongoing jurisdiction to allocate minor's counsel's fees and on the August 2007 "agreement."

Since the trial court's ruling on appellants' motion to vacate presented alternative legal grounds to support the substance of the relief embodied in the January 9 order and since those alternative grounds do not rest upon the correction of past orders on a nunc

17.

pro tunc basis, we believe the outcome of the instant appeal depends upon the legal validity or correctness of the trial court's alternative grounds expressed in its ruling. Specifically, we must examine whether the trial court's ruling on the motion to vacate was adequately supported by (i) the trial court's ongoing or reserved jurisdiction to allocate fees for minor's counsel and (ii) the representations or "agreement" allegedly made by the clerk of the Superior Court in August 2007 to the effect that respondent may submit his invoices to the Superior Court.

## IV.  Trial Court's Discretion Regarding Allocation of Fees for Minor's Counsel

We begin with the nature of the trial court's discretionary authority in connection with the appointment and payment of minor's counsel's fees. Where it is in the best interest of the minor child, the trial court may appoint private counsel to represent the interests of the child in a custody or visitation proceeding. (Fam. Code, § 3150, subd. (a).) A 2010 amendment to Family Code section 3150, subdivision (a), added a provision that "the court and counsel" must "comply with the requirements set forth in Rules 5.240, 5.241, and 5.242 .…" (Stats. 2010, ch. 352, § 14.)[18] Rule 5.240 sets forth specific factors the court should take into account in determining whether to appoint minor's counsel, and also lists what "must" be specified in the court's appointment order as well as what "may" be included therein. Rule 5.241 addresses the proper payment of the minor's counsel's fees, and rule 5.242 addresses the qualifications, rights and responsibilities of the minor's counsel. (See *In re Marriage of Metzger* (2014) 224 Cal.App.4th 1441, 1446.) "Upon entering an appearance on behalf of a child pursuant to this chapter, counsel shall continue to represent that child unless relieved by the court upon the substitution of other counsel by the court or for cause." (Fam. Code, § 3150, subd. (b).)

_____

[18]    The specified rules were previously adopted and became effective on January 1, 2008. (See rules 5.240, 5.241 & 5.242.)

18.

Counsel so appointed to represent a minor child "shall receive a reasonable sum for compensation and expenses, the amount of which shall be determined by the court." (Fam. Code, § 3153, subd. (a).) "Except as provided in subdivision (b), this amount shall be paid by the parties in the proportions the court deems just." (*Ibid*.) Subdivision (b) of section 3153 provides as follows: "Upon its own motion or that of a party, the court shall determine whether both parties together are financially unable to pay all or a portion of the cost of counsel appointed pursuant to this chapter, and the portion of the cost of that counsel which the court finds the parties are unable to pay shall be paid by the county. The Judicial Council shall adopt guidelines to assist in determining financial eligibility for county payment of counsel appointed by the court pursuant to this chapter."

The "clear legislative directive" in Family Code section 3153 "that counsel's fees are to be paid, either by the parties or by the county, imposes a mandatory duty upon the court to award attorney's fees to such counsel and vests in the attorney the right to receive a 'reasonable sum for compensation and expenses' at the time the order is made." (*In re Marriage of Lisi* (1995) 39 Cal.App.4th 1573, 1576 (*Lisi*).) In *Lisi*, the trial court appointed minor's counsel but postponed the decision on the amount and allocation of attorney fees. Subsequently, after one of the parties (the husband) died, the trial court determined the amount of fees to be paid to minor's counsel and ordered the fee obligation to be allocated equally between the wife and the husband's estate. An appeal was taken asserting the trial court lacked jurisdiction to award or allocate attorney fees after the husband's death. (*Id*. at p. 1575.) The Court of Appeal rejected the appellant's argument. It concluded that once the trial court appointed minor's counsel, there was a vested property right in the minor's counsel to receive a reasonable sum as compensation, and hence the trial court "retained jurisdiction after [the husband's] death to determine the amount of fees and allocate payment between the parties." (*Id*. at p. 1576.) The analysis of the Court of Appeal in *Lisi* confirms that a trial court appointing minor's

19.

counsel retains jurisdiction to subsequently decide issues relating to the payment and allocation of attorney fees.

Another example of retained power to consider (or reconsider) the issue of allocation is where a trial court has expressly reserved such power in its order appointing minor's counsel. This is explicitly recognized in rule 5.240(c)(2)(J), which allows that an order appointing minor's counsel may include the "[a]bility of the court to reserve jurisdiction to retroactively modify the order on fees and payment."

Finally, such discretion is reasonably implied in the wording of Family Code section 3153, subdivision (b), which provides that the trial court, "[u]pon its own motion" or "that of a party," shall determine the parties' lack of ability to pay all or a portion of the fees, and "the portion of the cost of that counsel which the court finds the parties are unable to pay shall be paid by the county." No time limitation is included in this statute regarding the trial court's power to consider such matters on its own motion or on a motion by a party. No indication is given that such matters could never be reconsidered, such as where there has been a change in circumstances. A reasonable construction of the broad language of section 3153, subdivision (b), is that the trial court has discretion to revisit the issues of ability to pay and the need to allocate fees as between the parents and the county, if the particular facts and circumstances so warrant.

Rule 5.241 is consistent with our analysis of Family Code section 3153. Rule 5.241(b) states that the trial court "must" determine the respective financial ability of the parties to pay all or a portion of minor's counsel's compensation.[19] As to the timing of that decision, rule 5.241(b)(2) provides that the trial court "should" determine the parties' ability to pay "(A) At the time counsel is appointed; [¶] (B) Within 30 days

---

[19] In making this determination, the court should consider factors such as the parties' income and assets reasonably available at the time of the determination, and the parties must have on file a current "*Income and Expense Declaration*" or "*Financial Statement*." (Rule 5.241(b)(1)(A) & (B).)

20.

after appointment; or [¶] (C) At the next subsequent hearing." However, the same rule provides that the trial court "*may redetermine*" the parties' ability to pay within "30 days after counsel is relieved as attorney of record." (Rule 5.241(b)(3), italics added.) Further: "If the court finds that the parties are unable to pay all or a portion of the cost of the child's counsel, the court must pay the portion the parties are unable to pay." (Rule 5.241(d).) It makes sense to allow a redetermination of such issues on the occasion of minor's counsel withdrawal as attorney of record, because that procedural event is often a result of a failure to pay the attorney his compensation. The fact that the rule provides a window of opportunity to redetermine such issues when minor's counsel is relieved as attorney of record does not, in our opinion, foreclose the trial court from doing so on other occasions in which special or unique circumstances arise. We believe that is the case here.

In the proceedings below, the trial court indicated a number of reasons for its legal conclusion that it had discretion to reexamine the allocation issue. At the January 9, 2013, hearing, the trial court emphasized not only its inherent authority under Family Code section 3153, but also the court's own express reservation of jurisdiction as specified in the June 7, 2007 order, which permitted the trial court to make further orders as may be appropriate for the payment or allocation of fees for minor's counsel. The same legal authority was reiterated in the trial court's order on appellants' motion to vacate. The trial court also pointed out from the bench that there had never been a determination of ability to pay in connection with the initial allocation of fees, which determination was required under the applicable law. At the January 9, 2013, hearing, the trial court made an effort to rectify that defect. It announced that it had "looked historically through every I&E" in the file, and determined that "[the mother] has no

21.

ability and has had no ability to pay [minor's counsel's fees] in addition to all of the other costs the parties were paying for the mental health people."[20]

Additionally, the trial court was confronted with the unique circumstance alleged in respondent's motion—that is, respondent's claim that the Superior Court, through the clerk, had represented or agreed in August 2007 that respondent's invoices may be sent to the Superior Court for payment. Respondent, who by the time his motion was filed was facing an impending trial date in appellants' False Claims Act lawsuit, pleaded with the trial court to clarify whether, in light of the clerk's assurances, he was permitted to submit his invoices to the Superior Court or not.

Under these highly unusual circumstances and in light of the trial court's inherent authority to consider payment and/or allocation issues pursuant to Family Code section 3153 and the court's express reservation of jurisdiction over such issues in the June 7, 2007 order, we conclude that the trial court had discretion to reexamine the question of allocation and to make appropriate rulings regarding same. This discretion included the ability of the trial court to consider the effect, if any, of respondent's showing concerning the alleged August 2007 agreement by the court.

One final note concerning this matter: We do not believe the trial court's power to reexamine or clarify the issues of payment or allocation of minor's counsel's fees was precluded by the statement in the original 2007 orders that respondent's fees were to be paid by the mother "without reallocation." In context, that language in the order was addressing the specific concern expressed by the father's attorney that the fees for minor's counsel must not be reallocated to the father. Thus, the wording was not

---

**20**    That finding was consistent with Ms. Codekas's position at the original May 2, 2007, hearing, when in her capacity as the father's attorney of record, she insisted that neither of the parties could afford minor's counsel.

22.

intended to foreclose the possibility of the Superior Court bearing the attorney fees obligation for minor's counsel.

## V.       No Abuse of Discretion Shown

In its ruling on appellants' motion to vacate, the trial court found that there was an August 2007 agreement or an understanding that respondent's "fees would be paid by the court." This fact meant that, starting in August 2007, respondent submitted his bills to the Superior Court with "the court's knowledge and consent." The trial court also indicated that the above factual findings were further substantiated by "the court and [respondent] each honoring this agreement through performance and payment." In the end, the trial court held the August 2007 agreement or understanding would be honored.

Appellants claim that the trial court drew an incorrect conclusion as a matter of law when it found, based on the evidence before it, that an agreement existed to the effect that respondent's invoices could be submitted to the Superior Court for payment. Appellants argue that, at most, there was an informal communication by a court clerk to respondent's secretary about what the clerk would do and what the clerk expected "the court" or the judge would do, etc., but not an enforceable agreement based on mutual assent or a meeting of the minds (see Civ. Code, §§ 1549, 1565, 1580) between respondent and a judicial officer of the Superior Court. We believe appellants' focus on whether an enforceable contract was adequately established is too narrow. In deciding whether reversible error occurred, our review is of the ultimate decision or ruling, not the particular reasoning adopted by the trial court. If the ruling was correct on any legal grounds, we will affirm. (See *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15-16 ["A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct."].) As explained below, we

conclude the trial court's ruling was correct on recognized equitable grounds, even if no formal contract existed.[21]

The particular equitable theory we have in view is that of equitable estoppel. The general nature of equitable estoppel may be stated as follows: Whenever a party has, by his own statement or conduct, intentionally led another to believe a particular thing and to act upon such belief, he is not, in any litigation relating to that statement or conduct, permitted to contradict it. (Evid. Code, § 623; 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 190, p. 527.) "'"The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted."'" (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 488.) The elements of equitable estoppel are: "'"(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."' [Citations.]" (*Lentz v. McMahon* (1989) 49 Cal.3d 393, 399.)[22]

---

[21]    In the present context, the ultimate ruling or conclusion of the trial court was that during the relevant time period, respondent was permitted to submit his invoices to the Superior Court for payment. The trial court's reasoning was premised on the existence of the August 2007 "agreement." As explained below, the ultimate ruling was proper for reasons that do not require the existence of an enforceable contract.

[22]    It might be argued that promissory estoppel *also* applies under the same facts. "In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.…' [Citations]" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310 (*Kajima*).) The effect of the doctrine is "'to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange.'" (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 242.) Here, because we conclude that equitable estoppel applies, we find it unnecessary to reach the question of promissory estoppel.

Here, the evidence before the trial court was that when respondent's secretary called the Superior Court clerk of the applicable family law department to report that respondent had to withdraw from the case due to the fee payment issue, the clerk made affirmative representations to the effect that "the Court wanted [respondent] to remain on the case as minor's counsel," the clerk would "discuss it with the judge," and that steps would be taken to "reissue a revised Order of Appointment, to show that the fees would be paid by the County." Consistent with these representations, it was further urged that respondent should "[g]o ahead and bill the County.'" Respondent relied on these representations, performed attorney services for the minor from August 2007 to late 2010, and submitted his invoices to the Superior Court for payment. During the relevant time period, the Superior Court continuously paid those invoices as submitted. No problem was indicated until a November 2010 court audit revealed that the only order on file was the 2007 order that the mother was to pay the fees.

It is clear that the representations by the clerk—i.e., that "the Court" wanted respondent to remain on the case, that once she spoke to "the Court" it was expected that an amended appointment order would be made, and that respondent should begin sending his invoices to the Superior Court for payment—caused respondent to change his position. Instead of withdrawing from the case, he remained, and, as urged by the clerk, he sent his invoices to the Superior Court for payment. This appears to have been the intended effect of the representations. The Superior Court, which was presumably aware of whether or not the amended order had been made or intended, performed in full accordance with the clerk's representations by approving respondent's bills for payment over a period of three years. And, as observed at the hearing below by the trial court based on its review of the court file: "[A]ll of the bills that [respondent] submitted do reflect that they were received by the Court. They were, in fact, reviewed by the Court. They were stamped approved by the Court, and they were paid. And all of those bills are in the file so that Judge Perkins and any subsequent judge and the clerks had easy access

25.

to all of that."[23]  Finally, if the trial court denied or failed to stand behind what was represented by its clerk and its own conduct, respondent would be subject to potential liability for billing the wrong person for his fees.  This reflects that the reliance by respondent was to his detriment.

We conclude that the requirements for application of equitable estoppel were present here, and form a sufficient basis to support the trial court's ruling below.[24] Indeed, it may be that the trial court was applying equitable principle all along, implicitly, regardless of the labels used.  In any event, since the ultimate ruling of the trial court was correct on this ground, we affirm the order below.

---

[23]     We are not saying the mere representations of a clerk, standing alone, are enough to create an estoppel.  It was the representations *combined with* the Superior Court's own conduct or performance that reflected the doctrine of equitable estoppel should be applied here.  We stress that this is a unique case and our conclusions are confined to its unique facts and procedural posture.

[24]     The doctrine of estoppel and other equitable principles may be applied against the government where justice requires; except that it will not be applied where doing so would nullify a strong rule of policy adopted for the benefit of the public.  (*Kajima*, *supra*, 23 Cal.4th at p. 316 [promissory estoppel applied against government entity]; *City of Long Beach v. Mansell*, *supra*, 3 Cal.3d at p. 493 [equitable estoppel applied against government entity].)  We know of no strong rule of policy implicated in the present case that would prevent application of estoppel.

# **DISPOSITION**

The order of the trial court is affirmed.  Costs on appeal are awarded to respondent.

_____
Kane, J.

WE CONCUR:


_____
Hill, P.J.


_____
Detjen, J.